IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

―――――――――――――

No. 00-30906

―――――――――――――

HARPER MACLEOD SOLICITORS,

                                    Plaintiff-Appellant,

                    v.

KEATY & KEATY, doing business as Keaty Law Firm,

                                    Defendant-Appellee.

--------------------
Appeal from the United States District Court
for the Eastern District of Louisiana
--------------------
July 26, 2001

Before KING, Chief Judge, ALDISERT[*] and BENAVIDES, Circuit
Judges.

BENAVIDES, Circuit Judge:

    Appellees Thomas Keaty, Robert Keaty and Keaty & Keaty,

d/b/a the Keaty Law Firm, (the Defendants) suffered a default

judgment in the Southern District of Texas in favor of Appellant

Harper Macleod Solicitors (Harper), a Scottish law firm.  When

Harper sought to register the default judgment in the Eastern

District of Louisiana pursuant to 28 U.S.C. § 1963, the

Defendants challenged its validity alleging deficient service of

process.  The Louisiana district court sustained that challenge

and, using Rule 60(b)(4), voided the default judgment.  Harper

―――――――――――――

    [*] Circuit Judge of the Third Circuit, sitting by
designation.

now appeals, arguing that (1) the Texas district court's jurisdictional findings should be afforded preclusive effect in accordance with Texas law, and (2) service on the Defendants sufficiently complied with the Texas long arm statute to support the default judgment issued by the Texas district court. After concluding that district courts have authority to entertain motions challenging the validity of another district court's judgment using Rule 60(b)(4), we confirm the propriety of the district court's reliance on federal rules of issue preclusion to determine that the Texas district court's jurisdictional findings did not preclude the Defendants from arguing their jurisdictional claims. Further, we agree with the Louisiana district court's conclusion that service on the Defendants was defective under Texas law. Accordingly, we AFFIRM the judgment of the Louisiana district court voiding the default judgment of the Texas district court.

### FACTUAL AND PROCEDURAL BACKGROUND

On August 18, 1998, Harper filed suit against the Defendants in the Southern District of Texas, Galveston Division (the Texas Court). Harper alleged fraud and breach of contract in relation to its referral of two personal injury plaintiffs to the Defendants. Federal jurisdiction was founded on diversity of citizenship.

Harper attempted service on the Defendants in accordance

2

with the Texas long-arm statute by forwarding three copies of the complaint, as well as three summonses, to the Texas Secretary of State (the Secretary). Harper provided the Secretary with the following "home or home office" addresses for the Defendants:

1.  To Defendant Keaty & Keaty d/b/a The Keaty Firm's home or home office:
    345 Doucet Road, Suite 104
    Lafayette, LA   70503

2.  To Defendant Robert M. Keaty's home or home office:
    c/o Keaty & Keaty
    1140 World Trade Center
    Two Canal Street
    New Orleans, LA   70130

3.  To Defendant Thomas S. Keaty Jr.'s home or home office:
    c/o Keaty & Keaty
    1140 World Trade Center
    Two Canal Street
    New Orleans, LA   70130

On September 1, 1998, Harper received from the Secretary certifications attesting that two copies of the summons and complaint had been delivered by certified mail to each defendant at the address provided for that defendant. The Secretary further certified that return receipts had been received "bearing Signature of Addressee's Agent."

The Defendants did not appear in the Texas Court. On January 14, 1999, the Texas Court entered an Amended Default Judgment in favor of Harper. The order judged the Defendants jointly and severally liable to Harper for $1,108,734.30 in

3

liquidated damages, inclusive of pre-judgment interest and attorneys' fees.  The order also recited that the Texas Court had jurisdiction over the Defendants and that the Defendants had been "properly served with the Summons and Complaint."

On March 2, 1999, Harper registered the default judgment in the Eastern District of Louisiana (the Louisiana Court) pursuant to 28 U.S.C. § 1963,[1] then commenced collection activities, specifically seeking the issuance of writs of execution and various garnishments.  Defendants responded to the collection activities by challenging the validity of the Texas Court judgment.[2]

On June 4, 1999, Harper filed an unopposed Rule 60(a) motion in the Texas Court seeking to amend the default judgment to include express findings in support of that court's exercise of personal jurisdiction over the Defendants.  The Texas Court

---

[1] Section 1963 provides:

> A judgment in an action for the recovery of money or property entered in any . . . district court . . . may be registered by filing a certified copy of the judgment in any other district . . . when the judgment has become final by appeal or expiration of the time for appeal . . . .  A judgment so registered shall have the same effect as a judgment of the district court of the district where registered and may be enforced in like manner. . . .

28 U.S.C. § 1963 (Supp. 2000).

[2] The Defendants styled their challenge as an "Answer and Counterclaim Under Rule 13 Asserting an Independent Action to Vacate 'Void' Default Judgment For Lack of Personal Jurisdiction."

4

subsequently signed an Order specifying that (1) Harper "properly provided the Texas Secretary of State with the addresses of each of the Defendants' 'home or home office' address" in accordance with the Texas long arm statute; (2) the record reflected that the Secretary actually forwarded process to each of the Defendants; (3) the record reflected that each Defendant had actually received process; and (4) the Texas Court had properly exercised personal jurisdiction over the Defendants.

Harper then moved for summary judgment in the Louisiana Court as to the validity of the Texas Court's default judgment. The district court granted the motion as unopposed on November 19, 1999, having granted the Defendants several extensions to oppose. The Defendants filed a "motion for reconsideration" on December 20, 1999 in support of which they offered evidence suggesting that neither the Keaty Law Firm nor Keaty & Keaty existed as a legal entity at the time Harper attempted service. Moreover, the Defendants maintained that none of the addresses provided to the Secretary by Harper accurately reflected the "home or home office" address of any of the Defendants. Because Texas law requires strict compliance with the Texas long arm statute, the Defendants asserted that service was defective and the Texas judgment void.

Treating Defendants' motion as a Rule 60(b)(4) request for relief from judgment on grounds of insufficient service, the Louisiana Court determined that (1) the Texas Court's

5

jurisdictional findings did not preclude the Defendants from collaterally raising jurisdictional defects under federal res judicata principles, and (2) service to the Defendants was defective under Texas law.  As a consequence, the Louisiana court declared that "the default judgment entered by the United States District Court, Southern District of Texas, Galveston Division is void."  Harper's subsequent motion for relief from judgment pursuant to Rule 60(b)(1) or (b)(6) was denied and final judgment was entered on July 13, 2000.  This appeal followed.

## DISCUSSION

Federal courts generally disfavor default judgments, preferring to resolve disputes according to their merits. *Lindsey v. Prive Corp.*, 161 F.3d 886, 892 (5th Cir. 1998); *Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 403 (5th Cir. 1981) (noting that Rule 60(b) should be "applied most liberally to judgments in default.")  This circuit has held that a district court *must* set aside a default judgment as void if it determines that it lacked personal jurisdiction over the defendant because of defective service of process.  *See, e.g., Bludworth Bond Shipyard, Inc. v. M/V Caribbean Wind*, 841 F.2d 646, 649 (5th Cir. 1988).  In this case, we are presented with defendants that suffered a default judgment in one federal district court, then challenged that judgment as void for lack of jurisdiction in the district court of registration.  It is well-established that

6

defendants need not appear in a federal court without authority to exercise personal jurisdiction over them to raise a jurisdictional defect.  Defendants are "always free to ignore . . . judicial proceedings, risk a default judgment, then challenge that judgment on jurisdictional grounds in a collateral proceeding."  *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 706, 102 S.Ct. 2099, 2106 (1982); *Broadcast Music, Inc. v. M.T.S. Enterprises, Inc*, 811 F.2d 278, 281 (5th Cir. 1987).

Harper, as the beneficiary of the default judgment, has not challenged the ability of a registering court to grant relief from another district court's judgment using Rule 60(b)(4) when the rendering court did not properly exercise jurisdiction. Instead, Harper alternatively argues that (1) a registering court should apply the relevant state law on issue preclusion to determine the effect of jurisdictional findings made by a rendering district court sitting in diversity, or (2) service on the Defendants was proper because it sufficiently complied with the Texas long arm statute.

Though we generally review a district court's Rule 60(b) ruling solely for abuse of discretion, *Bludworth Bond*, 841 F.2d at 649, "Rule 60(b)(4) motions leave no margin for consideration of the district court's discretion as the judgments themselves are by definition either legal nullities or not."  *Carter v.*

*Fenner*, 136 F.3d 1000, 1005 (5th Cir. 1998). As a consequence, our review of the issues raised in this appeal is effectively de novo. *See Export Group v. Reef Industries, Inc.*, 54 F.3d 1466, 1469 (9th Cir. 1995) ("We review de novo . . . . a district court's ruling upon a Rule 60(b)(4) motion to set aside a judgment as void, because the question of the validity of a judgment is a legal one.").

## I. A Registering Court May Rely on Rule 60(b)(4) to Entertain Jurisdictional Challenges to the Validity of a Default Judgment Issued By Another District Court

Although both the Louisiana Court and the parties assume that Rule 60(b)(4) empowers a registering court to void a judgment rendered by another district court, the scope of a registering court's power to alter or amend judgments rendered by another court through Rule 60(b) is uncertain. *See* WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2d § 2787 (1995).[3] Typically, relief under Rule 60(b) is sought in the court that

---

[3] This Court has never expressly recognized the authority of a registering court to void a judgment rendered in another district court. The Fifth Circuit cases relied upon by the district court to support its review of the Texas Court's jurisdiction, as well as those cited by the parties, involved either a rendering court considering a Rule 60(b)(4) motion to void its own judgment, *see Bludworth*, 841 F.2d at 648-49; *Broadcast Music*, 811 F.2d at 281; *Recreational Properties v. Southwest Mortg. Serv.*, 804 F.2d 311, 314 (5th Cir. 1986), or a district court's refusal to afford full faith and credit to a state court default judgment because the state court had no jurisdiction over the defendant. *See A.L.T. Corp. v. Small Business Administration*, 801 F.2d 1451 (5th Cir. 1986).

rendered the judgment at issue. *See id*. at § 2865. At least one circuit, the Seventh, has suggested that Rule 60(b) motions *must* be presented to the court that rendered the judgment in question. *See Board of Trustees, Sheet Metal Workers' Nat'l Pension Fund v. Elite Erectors, Inc.*, 212 F.3d 1031, 1034 (7th Cir. 2000).[4] Interpreting 28 U.S.C. § 1963, the court in *Elite Erectors* reasoned that a registering court has no authority over the judgment being registered. *Id*. Consequently, a registering district court could not, according to the Seventh Circuit, tell the rendering court not to enforce the judgment. *Id*. The court also expressed concern that various registering courts might resolve Rule 60(b) motions to modify or annul the same judgment differently. *Id*. The majority of circuits, however, has held or suggested that registering courts may rely on Rule 60(b)(4) to void a default judgment if the rendering court was without jurisdiction over the defendant. *See F.D.I.C. v. Aaronian*, 93 F.3d 636, 639 (9th Cir. 1996); *Rector v. Peterson*, 759 F.2d 809,

---

[4] Prior to *Elite Erectors*, the Seventh Circuit had suggested that a registering court could use Rule 60(b)(4) to void the judgment of another court. *See In re Joint Eastern & Southern Dist. Asbestos*, 22 F.3d 755, 762 n. 15 (7th Cir. 1994) ("[T]he authority of the registration court to entertain a motion under Rule 60(b)(4) appears to be well-established."); *Fuhrman v. Livaditis*, 611 F.2d 203, 205 (7th Cir. 1979) (refusing to "conclude that a registering court presented with a motion for relief from judgment based on lack of personal jurisdiction must in every instance defer to the court which originally issued the judgment. . . ." ).

9

811 (10th Cir. 1985); *Indian Head Nat. Bank of Nashua v. Brunelle*, 689 F.2d 245, 249 (1st Cir. 1982); *Covington Indus., Inc. v. Resintex A.G.*, 629 F.2d 730, 733 (2d Cir. 1980). Even the Seventh Circuit in *Elite Erectors*, though not granting registering courts authority over judgments through Rule 60(b), held that a registering court "was free to disregard the judgment . . . if the rendering court lacked jurisdiction." *Elite Erectors, Inc.*, 212 F.3d at 1034.

We join the majority of circuits and hold that registering courts may use Rule 60(b)(4) to sustain jurisdictional challenges to default judgments issued by another district court. Though judicial efficiency and comity among district courts often counsel a registering court to defer ruling on Rule 60(b) motions in favor of the rendering court, *see Fuhrman*, 611 F.2d at 205, such deference is less appropriate when the challenged judgment was issued without the benefit of argument from one party and the basis for the 60(b) challenge is jurisdictional. *See Covington Indus.*, 629 F.2d at 733. Requiring deference to a rendering court for determination of jurisdictional issues related to a default judgment is also difficult to reconcile with the established rule that a party may suffer a default judgment then collaterally attack that judgment upon enforcement. *See id*. at 733-34 (citations omitted). Finally, as noted in *Elite Erectors*, "[w]hether or not the district court enters an order under the

10

Rule 60(b)(4), principles of issue preclusion would prevent re-litigation of the jurisdictional question in other courts of registration." *Elite Erectors, Inc.*, 212 F.3d at 1034. Principles of issue preclusion apply with equal force in courts of rendition and registration: neither should re-adjudicate issues first heard and ruled on by another federal court. Therefore, even under the rule of *Elite Erectors*, a court of registration effectively can tell a rendering court not to enforce a *default judgment* when the defaulting defendant never appeared in the court of rendition and had a valid jurisdictional complaint. That one district court may exercise such authority over another is a necessary consequence of the established rule that a defendant may challenge a rendering court's personal jurisdiction in a court in which enforcement of a default judgment is attempted. Such authority also reflects the federal system's disdain for default judgments.

## II. The Louisiana Court Properly Applied Federal Rules of Issue Preclusion to Determine the Preclusive Effect of the Texas Court's Jurisdictional Findings.

Having concluded that the Louisiana Court had authority to undertake an independent inquiry into the jurisdictional basis of the Texas Court's judgment using Rule 60(b)(4), we next consider the first of Harper's two primary arguments on appeal: whether the Louisiana Court properly applied federal law when determining the preclusive effect of the jurisdictional recitations and

11

related factual findings contained in the Texas Court's original and amended judgments. Traditional rules of preclusion as adopted in federal case law - whether under the doctrine of collateral estoppel or res judicata - require that the party to be estopped from re-litigating a claim have had a full and fair opportunity to litigate the issue. *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326, 99 S.Ct. 645, 649 (1979). The Louisiana Court determined that "[b]ecause defendants did not have their day in court," they were not precluded from litigating the service of process issues collaterally.

In diversity actions like the one that produced the underlying default judgment in this case, the law of the forum state, subject to the constitutional limits imposed by the Due Process Clause, controls the ability of a district court to exercise personal jurisdiction over nonresident defendants. *See Southmark Corp. v. Life Investors, Inc.*, 851 F.2d 763, 772 n. 15 (5th Cir. 1988); *Stuart v. Spademan*, 772 F.2d 1185, 1189 (5th Cir.1985). Thus, Texas law provides the foundation for the Defendants' argument that service of process in the Texas proceeding was defective such that the Texas Court did not properly exercise jurisdiction over them when it rendered default judgment. On appeal, Harper argues that Texas law should also be applied to determine the preclusive effect of the jurisdictional findings contained in the Texas Court's original and amended

12

default judgments. Because Texas maintains the common law rule of absolute verity, under which plain jurisdictional recitals contained within a judgment are conclusive as to the rendering court's jurisdiction in a collateral proceeding,[5] Harper asserts that the Defendants should be barred from raising technical service of process issues collaterally in the Louisiana Court.

As support for its argument, Harper relies principally on the Supreme Court's full faith and credit jurisprudence which provides that "a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984); *Allen v. McCurry*, 449 U.S. 90, 96, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980) ("[T]hough the federal courts may look to the common law or to the policies supporting res judicata and collateral estoppel in assessing the preclusive effect of decisions of other federal courts, Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so . . . ."). Applying this rule,

---

[5] *See Akers v. Simpson*, 445 S.W.2d 957, 959 (Tex. 1969) ("It is the firmly established rule in Texas that a defendant who is not served and who does not appear may not, as a matter of public policy, attack the verity of a judgment in a collateral proceeding; the jurisdictional recitals import absolute verity.").

13

this circuit has held that when a federal court is asked to enforce a state judgment, the rendering state's law determines the preclusive effect of jurisdictional findings contained within the judgment, subject of course to the Due Process Clause. *See A.L.T. Corp.*, 801 F.2d at 1455, 1458-59.[6] Harper seeks to extend this rationale, reasoning that the Louisiana Court should have followed Texas' process for bringing a jurisdictional challenge to a default judgment.[7] Harper concedes, however, that because this case involves enforcement of a federal district court judgment by another federal district court, neither the Full Faith and Credit Clause nor the full faith and credit statute,[8]

---

[6] We note that the Defendants do not argue that they had no notice of the claim pending against them such that enforcement of the Texas Court's judgment would violate the Due Process Clause. Instead, the Defendants argue that service upon them violated technical requirements of Texas law, and, under that law alone, was insufficient.

[7] Harper's argument also finds some jurisprudential support in a recent Supreme Court decision holding that, while federal law determines the preclusive effect of all federal judgments on the merits of a case, the federal rule of decision in diversity cases generally should refer to the law of the state in which the rendering court sits. *See Semtek Int'l Inc. v. Lockheed Martin Corp.*, -- U.S.--, 121 S.Ct. 1021, 1028 (2001); *see also Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 429-31 (1996). Thus, Texas law determines the preclusive effect of the substantive issues addressed in the Texas Court's default judgment. *Semtek* did not address the role of state law in determining the preclusive effect of *jurisdictional findings* made by a federal court sitting in diversity. Moreover, Harper has not argued that Texas law on issue preclusion should apply to jurisdictional recitals under the Supreme Court's *Erie* jurisprudence. Thus, we need not address Harper's argument in terms of *Erie*.

[8] This statute provides:

14

or the cases interpreting them, control.  *See Baldwin v. Iowa State Traveling Mens Ass'n*, 283 U.S. 522, 524, 51 S.Ct. 517, 518 (1931).

We decline to extend full faith and credit principles to cases like this one involving the enforcement of a federal judgment by another federal court.  We begin our analysis by reiterating the power of a court of registration to inquire into the jurisdiction of the rendering court before enforcing the rendering court's judgment.  *See Covington Indus.*, 629 F.2d at 732 ("When, in an enforcement proceeding, the validity of the judgment is questioned on this ground [of lack of personal jurisdiction], the enforcing court has the inherent power to void the judgment[.]" (citing <u>Baldwin</u>, 283 U.S. at 525)).[9]  Moreover,

> [t]he . . . judicial proceedings of any court of any such State . . . shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State . . . .

28 U.S.C. § 1738 (1982).

[9] This principle has a long lineage in our jurisprudence. *See Chicago Life Ins. Co. v. Cherry*, 244 U.S. 25, 29 (1917) ("There is no doubt of the general proposition that in a suit upon a judgment the jurisdiction of the court rendering it over the person of the defendant may be inquired into."); *Hall v. Lanning*, 91 U.S. 160, 165 (1875) ("[T]he jurisdiction of a foreign court over the person or the subject-matter embraced in the judgment or decree of such court is always open to inquiry[.]").  The requirement that a court have jurisdiction over the person before rendering judgment is rooted in due process and is a basic requirement that must be satisfied before a valid judgment can be had or, as germane to this case, be enforced.  *See, e.g., Ins. Corp. of Ireland, Ltd.*, 456 U.S. at 702 ("The requirement that a court have personal jurisdiction

15

federal case law has long allowed parties to federal lawsuits to rely on this power by granting defendants the ability "to ignore the judicial proceedings, risk a default judgment, and then challenge that judgment on jurisdictional grounds in a collateral proceeding." *Ins. Corp. of Ireland, Ltd.*, 456 U.S. at 706; *Broadcast Music, Inc.*, 811 F.2d at 281. Application of Texas' rule of absolute verity would undermine this foundational principle of federal jurisdictional law by preventing defendants from testing a district court's jurisdiction by suffering a default judgment, then raising jurisdictional issues when the default judgment is enforced. For that reason, we decline to sustain Harper's request that we use Texas law to determine the preclusive effect of *jurisdictional* findings contained in a federal judgment.[10]

Since application of state law in this case is

_____

flows not from Art. III, but from the Due Process Clause."). If the rendering court did not have such jurisdiction, its judgment is invalid. *See N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 143 (5th Cir. 1996) ("A judgment is void . . . if the court that rendered it lacked jurisdiction . . . of the parties[.]" (internal quotations omitted) (quoting *Williams v. New Orleans Pub. Serv., Inc.*, 728 F.2d 730, 735 (5th Cir. 1984))); *Broadcast Music, Inc.*, 811 F.2d at 281 ("A court which lacks personal jurisdiction over a defendant cannot enter a valid judgment against that defendant.").

[10] We recognize that our refusal to apply state law to resolve this question turns on the substance of Texas law. We need not determine in this case whether a different state law could be used as the federal rule for determining the preclusive effect of jurisdictional findings made by a federal district court sitting in diversity.

16

inappropriate, the Louisiana Court properly applied federal rules of issue preclusion to determine whether the Texas Court's jurisdictional findings precluded litigation of the Defendants' jurisdictional arguments. The Louisiana Court noted "[n]owhere in the ruling is there any mention of any challenges or exhibits made by defendant. It appears that defendant was not present for, nor in any way, participated in the proceeding." Based upon this finding, we agree with the Louisiana Court's decision to afford the Texas court's jurisdictional recitals no preclusive effect.

## III. The Louisiana Court Properly Ruled That Service Upon the Defendants Was Defective Pursuant to Texas Law

Having determined that the district court properly undertook an independent review of the Texas Court's jurisdiction to enter a default judgment against the Defendants, we next turn to the merits of the jurisdictional issues raised. The parties agree that Texas law, specifically the Texas long arm statute and the cases interpreting it, determine whether service of process was effective on the Defendants. *See* FED. R. CIV. PROC. 4 (e)(1) (West 1999). To support a default judgment against a jurisdictional challenge, Texas law requires plaintiffs to prove that (1) the pleadings established that the Defendants were amenable to service, and (2) evidence in the record demonstrates the Defendants were in fact served in the manner required by the

17

Texas long arm statute. *Bludworth*, 841 F.2d at 649; *Whitney v. L & L Realty Corp.*, 500 S.W.2d 94, 95-96 (Tex. 1973).[11] The Defendants do not dispute that the record reveals that they were amenable to service, thus the inquiry before the district court, and before this Court, implicates only the second prong of *Whitney.*

Section 17.044(b) of the Texas Civil Practice & Remedies Code provides for substituted service on the Secretary for nonresident defendants doing business in Texas that do not maintain a regular place of business in Texas, provided that the relevant proceeding arises out of business done in Texas. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 17.044(b) (West 1999). Specifically, plaintiffs must comply with notice requirements of section 17.045(a):

> If the Secretary of State is served with duplicate copies of process for a nonresident, he shall require a statement of the name and address of the nonresident's home or home office and shall immediately mail a copy of the process to the nonresident.

*Id*. at § 17.045(a). In analyzing whether Harper complied with the Texas long arm statute, we must screen the record "to

_____

[11] This Court has previously noted possible tension between Texas and federal law on the burden of proof: Texas law assigns the burden of proving service issues to the plaintiff, while the movant under Rule 60(b) generally bears the burden of proof. *Bludworth Bond*, 841 F.2d at 649 n. 7. As in *Bludworth*, however, the addresses provided to the Secretary by Harper are uncontested and consequently we are able to determine the adequacy of service as a matter of law. *See id.*

factually determine that the address provided to the Secretary of State was in fact the home or home office of the nonresident defendant (notwithstanding it was so labeled)." *Mahon v. Caldwell, Haddad, Skaggs, Inc.*, 783 S.W.2d 769, 771 (Tex. App. 1990, writ denied).

Texas courts have consistently required strict compliance with the terms of the Texas long arm statute. *See Mahon*, 783 S.W.2d at 771. According to the Texas Supreme Court, "[a] typographical error in the forwarding address . . . is grounds to set aside a default judgment based on substituted service." *Royal Surplus Lines Ins. Co. v. Samaria Baptist Church*, 840 S.W.2d 382, 383 (Tex. 1992); *see also Commission of Contracts of General Executive Committee of Petroleum Workers Union of Republic of Mexico v. Arriba, Ltd.*, 882 S.W.2d 576, 585 (Tex. App. 1994, no writ) ("If the Secretary of State sends the citation and a copy of the petition to the nonresident defendant using an incorrect address for the defendant, then a default judgment should be set aside.") Moreover, "[a]ctual notice to a defendant, without proper service, is not sufficient to convey upon the court jurisdiction to render default judgment against [the defendant]. Rather, jurisdiction is dependent upon citation issued and service in a manner provided for by law." *Wilson v. Dunn*, 800 S.W.2d 833, 836 (Tex. 1990).

The Louisiana Court held that service was defective with

19

respect to each of the Defendants because, inter alia, none of the addresses provided to the Secretary accurately stated a home or home office address for any one of the defendants. Harper has not provided any basis for reversing this determination. Instead, Harper concedes that it provided the Secretary with (1) "a former address for service upon the partnership Keaty & Keaty d/b/a The Keaty Firm at its Lafayette office;" and (2) addresses for Robert and Thomas Keaty that contained "a typographical error in the suite number." According to Texas law, such mistakes render service defective. *Royal Surplus Lines,* 840 S.W.2d at 383; *Arriba,* 882 S.W.2d at 585. That the Defendants may have had actual notice of service is of no consequence since the Texas Supreme Court has expressly rejected an actual notice exception to strict compliance with the terms of the long arm statute. *Wilson*, 800 S.W.2d at 836. The district court therefore properly determined that service was inadequate under Texas law and could not support a default judgment.

### CONCLUSION

A party may contest personal jurisdiction or method of service by refusing to appear, suffering a default judgment, then collaterally attacking that default judgment when the plaintiff initiates enforcement proceedings. Thus, the Louisiana Court properly considered whether the Texas Court had jurisdiction over the Defendants. In undertaking its jurisdictional analysis, the

20

Louisiana Court appropriately applied federal rules of issue preclusion to determine that the Texas Court's jurisdictional recitals were not entitled to deference because they were not produced after full and thorough litigation.  Finally, the Louisiana Court correctly concluded that Harper failed to provide the Secretary with an accurate "home or home office" address for any of the Defendants.  Hence, we AFFIRM the Louisiana Court's judgment voiding the Texas Court's default judgment under Rule 60(b)(4).

AFFIRMED.

KING, Chief Judge, specially concurring:


I concur in the judgment and in all of Judge Benavides's fine opinion with the exception of Part I, which addresses whether a registering court has the power to alter or amend a rendering court's judgment through Rule 60(b).  I write only to state that I agree with Judge Easterbrook's treatment of this issue in Board of Trustees, Sheet Metal Workers' National Pension Fund v. Elite Erectors, Inc., 212 F.3d 1031 (7th Cir. 2000).  As in Elite Erectors, the central issue in this case is whether the rendering court had jurisdiction over the Defendants to enter the default judgment against them.  I concur in the judgment in this case, however, because under either Judge Easterbrook's analysis or Judge Benavides's analysis, the result is the same because the registering court is "free to disregard the [rendering court's] judgment, without formally annulling it under Rule 60(b)(4), if the rendering court lacked jurisdiction."  Id. at 1034.