# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

——————

No. 16-10687

——————

United States Court of Appeals
Fifth Circuit

**FILED**

May 24, 2017

Lyle W. Cayce
Clerk

BHTT ENTERTAINMENT, INCORPORATED,

Plaintiff–Appellee,

versus

BRICKHOUSE CAFÉ & LOUNGE, L.L.C.;
BRICKHOUSE RESTAURANT AND BAR, L.L.C;
JONAH INVESTMENTS, L.L.C.,

Defendants–Appellants.

————————————

Appeal from the United States District Court
for the Northern District of Texas

————————————

Before SMITH and HAYNES, Circuit Judges, and JUNELL, District Judge.*
JERRY E. SMITH, Circuit Judge:

Brickhouse Café & Lounge, LLC, Brickhouse Restaurant and Bar, LLC, and Jonah Investments, LLC (collectively, "Brickhouse"), appeal a default judgment. BHTT Entertainment, Incorporated ("BHTT"), challenges this

---

* District Judge of the Western District of Texas, sitting by designation.

court's jurisdiction and contends that, in the event we do have appellate jurisdiction, we should affirm the default. We conclude that we do have jurisdiction and that the district court was correct to enter default judgment.

I.

This case began as a garden-variety trademark dispute. BHTT owns the trademarks to Brick House Tavern + Tap and Brick House Subs (collectively, "the BHTT Marks"). Brickhouse operates two restaurants in the Dallas area—one in Arlington, one in Desoto—promoted at various times as The Brickhouse Lounge, Brickhouse Café & Lounge, and Brickhouse Grill & Bar (collectively, "the Brickhouse Marks"). BHTT concluded that Brickhouse's usage of the Brickhouse Marks infringed on the BHTT Marks, so it sued Brickhouse Café & Lounge LLC (and only that specific LLC), alleging trademark infringement, in August 2015.

After an entry of default against Brickhouse Café & Lounge, LLC, BHTT discovered that the other two defendants also had managerial roles with regard to the Brickhouse Lounge. BHTT amended its complaint to add them as defendants and attempted to serve its complaint on Charles Bailey, the registered agent for each component of Brickhouse. Bailey proved elusive; his listed address was an open field beside Interstate 20 in Grand Prairie, Texas, and attempts to contact him at other businesses and residences associated with him met with failure. Faced with Bailey's elusiveness, BHTT successfully moved for substituted service under Federal Rule of Civil Procedure 4(e)(1) and Texas Rule of Civil Procedure 106(b)(2), whereupon BHTT served Brickhouse in the manner the district court had prescribed.

Brickhouse did not respond. BHTT moved for an entry of default, the clerk entered it, BHTT moved for a default judgment, and the district court entered a default judgment in April 2016. Only then did Brickhouse deign to

No. 16-10687

appear; it did not contest the default judgment in district court but instead appealed.

Brickhouse's initial brief in this court was due August 1, 2016, but it failed to meet both that deadline and an extended deadline granted after a motion for extension of time. Faced with that dilatory conduct, the clerk of this court entered an order dismissing Brickhouse's appeal for want of prosecution pursuant to Fifth Circuit Rule 42.3. That dismissal returned the mandate to the district court. Brickhouse's counsel moved to reinstate the appeal; the clerk initially denied that motion but granted it upon reconsideration and re-opened the case. The order the clerk issued reopening the case, however, did not state explicitly that it was recalling the mandate from the district court. Briefing in this case has continued without any major problems since that time.

BHTT avers that the clerk's order reopening the appeal did not suffice to recall the mandate and that the failure to recall the mandate divests us of appellate jurisdiction. In the alternative, BHTT contends that Brickhouse's failure to contest the default judgment first in the district court means that all its issues in the court of appeals are waived, based on our well-known practice of generally not considering arguments not first made before the district court.[1] And, finally, BHTT contends that the district court was correct in its judgment of default regardless. Brickhouse does not respond to the first two arguments raised by BHTT; it confines its appeal to challenges to service of process and answers to BHTT's trademark claims on the merits.[2]

---

[1] *See, e.g.*, *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1071 n.1 (5th Cir. 1994) (en banc).

[2] Because we uphold the default judgment, we do not reach the merits of the trademark claims. Indeed we could not—because we conclude that service was properly effected, we affirm the default judgment regardless of the merits of BHTT's trademark claims. But even if we were to conclude service was improper, the remedy would not be to examine the

No. 16-10687

II.

BHTT urges that this court never recalled the mandate that issued when this case was initially dismissed for want of prosecution and that the failure to recall the mandate is fatal to appellate jurisdiction. The list of cases in which this court states unequivocally that the district court re-assumes jurisdiction once the mandate issues is long.[3] Equally numerous are the cases in which this circuit has debated whether to recall the mandate as a means of once again having jurisdiction over a given case.[4] We have no difficulty in concluding that the mandate is the jurisdictionally significant document here and that recall of the mandate is necessary for this court to regain jurisdiction over an appeal dismissed for want of prosecution.

BHTT presents two theories why the clerk could not have recalled the mandate. First, it points out that the clerk's order reinstating this appeal merely stated that the "[c]ase is reopened"; BHTT suggests that that terse statement did not suffice to recall the mandate. Second, BHTT contends that, even in the event the clerk's pronouncement purported to recall the mandate, the clerk lacked the power to do so under the Fifth Circuit's rules, and so any supposed recall was ineffective.

We dispense with the second argument first. The circuit's rules leave us with the firm conviction that the clerk can recall a mandate under the

---

trademark claims but to dismiss the case. Brickhouse's attempt to have us examine the merits suggests a fundamental misunderstanding of what a default judgment is.

[3] *See, e.g.*, *Arenson v. S. Univ. Law Ctr.*, 963 F.2d 88, 90 (5th Cir. 1992) ("The district court regained jurisdiction over the case upon our issuance of the mandate.").

[4] *See, e.g.*, *Goodwin v. Johnson*, 224 F.3d 450, 459 (5th Cir. 2000) ("To consider Goodwin's . . . claim, we must identify a means of asserting jurisdiction over it. An individual seeking to avoid the effects of an appellate court's prior decision may bring to the court a motion to recall its mandate."); *see also, e.g.*, 16 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 3938 (3d ed. updated Jan. 2017) (discussing power of appellate courts to regain jurisdiction by recalling the mandate).

circumstances presented here. Fifth Circuit Rule 27.1.6 gives the clerk the authority to "reinstate appeals dismissed by the clerk"; this is the rule under which Brickhouse moved to reinstate its appeal. No one contests that the mandate issues immediately upon the dismissal of an appeal by the clerk, and it would make little sense to give the clerk the authority to reinstate appeals he dismissed but to render any such reinstatement jurisdictionally infirm from its inception.

BHTT counters that Rule 27.2.7 explicitly states that only a judge is empowered to recall the mandate, as distinguished from the various motions that a clerk may rule on listed in Rule 27.1. This is correct, in some sense, though BHTT omits relevant context; Rule 27.2.7 permits a single judge to "stay the issuance of mandates or . . . recall same *pending certiorari*." It is silent on the power to recall a mandate where certiorari does not loom. More-over, the internal operating procedures ("IOPs") to Rule 27 state that "[t]he clerk or a single judge, as appropriate, decides a motion for stay or recall of mandate pending action on a petition for writ of certiorari . . . ." Given the conflict between Rule 27.2.7 and its IOPs, as well as their limitation to situations in which certiorari is a factor, the clerk's power to recall a mandate is coterminous with his power to reinstate an appeal under Rule 27.1.

Did he do so here? True, the order reopening this case did not explicitly recall the mandate, and Brickhouse's motion also called for reopening the case instead of recalling the mandate. But to hold that such a minor change in wording deprives us of appellate jurisdiction would be to privilege form too much over function. A motion to recall the mandate and a motion to reopen the case have the same effect; they both ask this court to resurrect a matter it had finally disposed of. Thus, we conclude that the clerk had the power to recall the mandate here, that its order reopening the case did do so, and that

No. 16-10687

we have appellate jurisdiction.[5]

### III.

BHTT maintains that Brickhouse has waived its insufficient-service-of-process argument by failing to raise it first in the district court. In BHTT's view, after the default judgment was entered Brickhouse should have moved to set it aside under Federal Rule of Civil Procedure 60(b)'s provisions for relief from a final judgment, then appealed from a denial of that order if unsuccessful. To permit Brickhouse to appeal directly from the default judgment, BHTT posits, would be to countermand this court's long-held rule that arguments not brought in the district court are waived[6] and would force three-judge appellate panels to decide questions better decided by one-judge district courts with factfinding powers.

There is a circuit split on this issue.[7] But, given the weakness of Brickhouse's arguments for vacating the default judgment, choosing sides fully and

---

[5] One additional approach, not mentioned by either side, might have some salience here. In *Colbert v. Brennan*, 752 F.3d 412 (5th Cir. 2014), we refused to reinstate an appeal after the appellant had voluntarily dismissed his initial notice. That was because the voluntary dismissal "plac[ed the appellant] in the same position as someone who never filed an appeal," and the motion to reinstate the appeal came far outside the time limit set by the Federal Rules of Appellate Procedure to file an initial appeal. *Id.* at 416–17. This was so even though a judge of this court had issued a previous order reinstating the appeal. *Id. Colbert*, however, is easily distinguished; there was no voluntary dismissal here. A dismissal for want of prosecution does not operate similarly to a voluntary dismissal, in that it does not render the appellant equivalent to someone who has not filed an appeal. As long as the motion to reinstate the appeal/recall the mandate is timely, the clerk, a single judge, or a panel of three judges can grant the motion as appropriate.

[6] *See, e.g.*, *Hardiman v. Colvin*, 820 F.3d 142, 152 (5th Cir. 2016).

[7] *Compare Consorzio del Prosciutto di Parma v. Domain Name Clearing Co.*, 346 F.3d 1193, 1196 (9th Cir. 2003) (holding that challenges to default judgments must first be brought under Rule 60(b); *CFTC v. Am. Commodity Grp. Corp.*, 753 F.2d 862, 865–66 (11th Cir. 1984) (per curiam) (same) *with Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 170 (2d Cir. 2001) (permitting challenges to a default judgment to be brought first in the court of appeals). In an unpublished opinion, we agreed with *Pecarsky. See SUA Ins. Co. v. Buras*, 421 F. App'x 384, 385 n.2 (5th Cir. 2011).

No. 16-10687

finally is best left for another day. We assume *arguendo* that Brickhouse can challenge the default judgment without first bringing a Rule 60(b) motion in the district court,[8] and we turn to consideration of that challenge.

IV.

Brickhouse maintains that the default judgment must be set aside because service of process was invalid. "This court reviews a district court's decision on entry of a default judgment for abuse of discretion." *Cambridge Toxicology Grp., Inc. v. Exnicios*, 495 F.3d 169, 179 (5th Cir. 2007). The validity or invalidity of service of a defendant in a federal district court is governed by federal law,[9] and the federal law of service is provided by Federal Rule of Civil Procedure 4. Because service was effected under Rule 4(e)(1), which permits service by "following state law in courts of general jurisdiction in the state where the district court is located or service is made," we look to Texas law to determine whether service of process on Brickhouse was proper. *See, e.g.*, *Harper Macleod Solicitors v. Keaty & Keaty*, 260 F.3d 389, 398 (5th Cir. 2001). And under Texas law, BHTT must prove that Brickhouse (1) was amenable to service and (2) was served in a manner in keeping with Texas's service rules.[10]

---

[8] Federal courts cannot use "hypothetical jurisdiction" to assume that they have jurisdiction for purposes of deciding the merits. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998). But courts can consider one procedural issue that impacts jurisdiction over another issue that does so. *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 432 (2007) (stating that there is no specific sequencing to procedural issues affecting jurisdiction). Here, the appellee is contending that we cannot reach the appellant's argument that service was defective because a Rule 60 motion challenging defective service is a predicate to deciding the question of defective service. Defective service, however, is itself an issue that bears not on the merits but on the court's power to hear the case. *See Carimi v. Royal Carribean Cruise Line, Inc.*, 959 F.2d 1344, 1345 (5th Cir. 1992). Thus, we address the issue of defective service and either dismiss for defective service or conclude that there was no such defect, thus vitiating appellee's Rule 60 argument.

[9] *See Hanna v. Plumer*, 380 U.S. 460, 461, 474 (1965).

[10] *Bludworth Bond Shipyard, Inc. v. M/V Caribbean Wind*, 841 F.3d 646, 649 (5th Cir. 1988); *Whitney v. L&L Realty Corp.*, 500 S.W. 2d 94, 95–96 (Tex. 1973).

No. 16-10687

Although Brickhouse has not challenged its amenability to service, its briefing raises three arguments as to why service was improper under Texas law.  First, it claims that "each of the sworn affidavits of service state [*sic*] that each defendant was served on March 12, 2016 at 3:35 pm, by the same process-server, at three different addresses, which is physically impossible."  Second, it posits that Section 5.251(1)(B) of the Texas Business Organizations Code requires that the Secretary of State be served if a corporation's registered agent cannot be located, but the Secretary of State was not served here.  Finally, Brickhouse states without elaboration that "each of the affidavits fails to properly identify the address where process was served and/or fails to correctly indicate the time at which process was served, which violates the requirements of Tex. R. Civ. P. 107."

To Brickhouse's first contention—under Texas Rule of Civil Procedure 106(a), service is normally to be effected by in-person delivery or certified mail on a corporation's designated agent.  BHTT repeatedly tried to effect service in that way, but all of those attempts were unsuccessful because, as detailed above, Brickhouse's registered agent, Charles Bailey, could not be found at any of the addresses associated with him.  Because of that, BHTT elected to request the district court to permit substituted service under Rule 106(b)(2), which permits a court to authorize service "in any other manner that the affidavit or other evidence before the court shows will be reasonably effective to give the defendant notice of the suit."  The district court granted that request, stating that BHTT could serve Brickhouse by leaving the summons and amended complaint with "anyone over sixteen years of age during regular business hours at Brickhouse Café & Lounge at 2525 East Arkansas Lane, Arlington, Texas 76010."

In other words, the district court directed BHTT to serve all three

8

defendants at once, by leaving the summons and complaint with one person in one location. And the process-server stated in his affidavits that he served the defendants in the manner prescribed by the district judge. Contrary to Brickhouse's suggestion, those affidavits do not assert that the server was in three different places at the same time; they merely list the respective addresses of the various Brickhouse defendants as identifying information and do not suggest that service was actually effected at the listed addresses. The process-server served all three Brickhouse defendants at one time and in one place, per the district court's instructions. Brickhouse's theory suggesting the opposite has no merit.

So too for its next argument. Brickhouse avers that the procedure in Section 5.251(1)(B)—namely, serving the Secretary of State if the registered agent for a corporate entity cannot be found—represents the only acceptable means of serving Brickhouse. Again, this notion is frivolous; Section 5.256—part of the very same subchapter—explains that "[t]his chapter does not preclude other means of service of process . . . on a domestic or foreign entity as provided by other law." Rule 106(b)(2) is, of course, other law, and the procedure laid out in Section 5.251(1)(B) does not preclude it.

Brickhouse's final position is that the affidavits of service do not properly identify the time and location at which service was effected, rendering service invalid. Cited as authority is Texas Rule of Civil Procedure 107, but it has no requirement that location be noted on the return of service; it says only that the return of service "shall state when the citation was served and the manner of service and be signed by the officer officially or by the authorized person," without mentioning location. And, contrary to Brickhouse's complaints, each affidavit does in fact state the time at which it was served. So the affidavits at issue here meet Rule 107's requirements. Moreover, Rule 107 states that

No. 16-10687

"[w]here [service] is executed by an alternative method as authorized by Rule 106, proof of service shall be made in the manner ordered by the court." As discussed above, service in this case was under Rule 106, so Rule 107 is irrelevant to the merits of service here.

Post-briefing, Brickhouse raised three additional barriers to proper service: two via Fifth Circuit Rule 28(j) letter and one at oral argument. In its Rule 28(j) letter, Brickhouse contends first that *Harper Macleod* establishes that Texas law governs service under the Texas Rules of Civil Procedure. We do not disagree. In *Harper Macleod*, 260 F.3d at 398–99, this circuit set aside a default judgment because service did not strictly comply with the relevant portion of Texas's service rules. But what *Harper Macleod* has to do with this case beyond that uncontroversial proposition is unclear. It dealt with service under Section 17.044(b) of the Texas Civil Practice and Remedies Code, which "provide[d] for substituted service on the Secretary for nonresident defendants doing business in Texas that do not maintain a regular place of business in Texas." *Harper Macleod*, 260 F.3d at 398. As discussed above, Brickhouse's place of business is in Texas, so Section 17.044(b), and thus that portion of *Harper Macleod*, is neither here nor there.

The second case that appears for the first time in Brickhouse's Rule 28(j) letter is *Uvalde Country Club v. Martin Linen Supply Co.*, 690 S.W.2d 884 (Tex. 1985) (per curiam). There the court deemed service improper where service nominally effected on Uvalde's registered agent, Henry Bunting, Jr., was in fact made on someone denoted on the return of service as just "Henry Bunting." *Id.* Here, of course, Brickhouse's registered agent was never served, because he could not be located. Instead, service was effected in accordance with other relevant provisions of Texas law. *Uvalde Country Club*, too, is inapposite.

Finally, for the first time at oral argument, Brickhouse raised *Bailey's*

10

No. 16-10687

*Furniture, Inc. v. Graham-Rutledge & Co.*, 2012 WL 6554420 (Tex. App.—Dallas 2012, no pet.) (mem.), to recommend that, under Texas law, the only way to effect substituted service on a corporation is through the Secretary of State. *Bailey's Furniture*, however, does not even mention the Secretary of State. Instead, the court ruled service improper because "service was sought upon Bailey's Furniture, but the affidavit upon which the trial court based its decision to order substituted service identified the defendant as Charles Bailey." *Id.* at *2.[11] The dissonance between the affidavit accompanying the request for substituted service and the actual defendant rendered service improper in that case. *Id.* But no such conflict is present here.

Service in this case was unremarkable. The only wrinkle was Bailey's elusiveness. Brickhouse's protestations to the contrary reveal not some heretofore unseen flaw in service but rather its apparent ignorance of proper methods of service under both Texas and federal law. The judgment of default is AFFIRMED.

---

[11] This appears to be the same Charles Bailey who proved so evasive in the case at bar.

11