**COVINGTON INDUSTRIES, INC.,**
**Plaintiff-Appellant,**

v.

**RESINTEX A. G. and Horst Susskind,**
**Defendants-Appellees.**

**No. 585, Docket 79–7596.**

United States Court of Appeals,
Second Circuit.

Argued Jan. 10, 1980.

Decided June 23, 1980.

F. T. Davis, Jr., Atlanta, Ga. (Stephen J. Smirti, Jr., Colleran, O'Hara & Kennedy, P.C., Garden City, N. Y., of counsel), for plaintiff-appellant.

William W. Esseks, Riverhead, N. Y. (W. Stanley Blackburn, Atlanta, Ga., Tooker, Esseks, Hefter, Cuddy & Angel, Riverhead, N. Y., of counsel), for defendants-appellees.

Before LUMBARD, MOORE and MES-KILL, Circuit Judges.

MESKILL, Circuit Judge:

In 1977, the United States District Court for the Northern District of Georgia ("the Georgia court") entered a judgment on default of appearance against appellees. Appellants, seeking enforcement, subsequently registered that judgment in the United States District Court for the Eastern District of New York ("the New York court"). Alleging that the Georgia court had never obtained in personam jurisdiction over them, appellees moved under Rule 60(b), Fed.R.Civ.P., requesting the New York court to vacate and set aside the default judgment. After determining that it had jurisdiction to grant the motion to vacate the judgment of a sister court, the New York district court held that the Georgia court lacked in personam jurisdiction over the appellees, and that the judgment was therefore void. We conclude that the court below did not err either in granting relief from the judgment of a foreign court of coordinate jurisdiction or in measuring the reach of Georgia's long-arm statute, and consequently, we affirm.

*Background*

Appellant Covington Industries, Inc. is a Georgia corporation with its principal place of business in Atlanta. Haitex Apparel, S.A., a subsidiary of Covington, is a Haitian corporation. Covington and Haitex are engaged in the textile and apparel industry. Resintex A.G., a Swiss corporation, acts as a manufacturer's agent in purchasing and selling textiles in Europe and the Far East.

In 1976, Eric Henderson, president of both Covington and Haitex, traveled to the Switzerland office of Resintex and met its manager, appellee Horst Susskind. At this meeting and apparently later in Haiti, Henderson and Susskind negotiated an agreement for purchase through Resintex of denim material from the Hong Kong market. As Judge Pratt found below,[1] the parties entered into this agreement on behalf of Haitex and provided that Haitex would establish letters of credit in favor of Resintex in payment for the purchases. It appears, however, that Haitex had difficulty arrang-

---

1. Covington alleged in its original complaint and continues to assert in these proceedings that the transactions at issue involved only contracts between Covington and Resintex. Resintex urges, and Judge Pratt stated in his opinion, that the agreements were between Haitex and Resintex, with Covington supplying its credit only as a convenience to the parties. We accept, as not clearly erroneous, the findings of the court below. Fed.R.Civ.P. 52(a); *Rolf v. Blyth, Eastman Dillon & Co., Inc.*, 570 F.2d 38, 45 (2d Cir.), *cert. denied* 439 U.S. 1039, 99 S.Ct. 642, 58 L.Ed.2d 698 (1978).

ing for these letters of credit. After several telex messages passed between Henderson and Resintex, Covington established alternate letters of credit in Resintex's favor at Covington's Atlanta bank. After the denim had been delivered to Haitex, Resintex submitted invoices and bills of lading at a Swiss bank and drew on the letters of credit. The documents were forwarded through banking channels to the Atlanta bank, where Covington's account was charged with the amount of the letters of credit.

Alleging breach of contract and fraudulent misrepresentation, Covington filed suit in the United States District Court for the Northern District of Georgia, claiming that the denim material did not meet the contract specifications and that the invoices and bills of lading were therefore false. Although process was served pursuant to court order, neither Resintex nor Susskind entered an appearance in the action. After receiving evidence on damages, the Georgia court entered a default judgment.

Covington subsequently registered the default judgment in the United States District Court for the Eastern District of New York [2] and instituted garnishment proceedings against Susskind's New York assets, including a bank account. After receiving notice that a restraining order had been issued in regard to this account, appellees moved in the New York court, pursuant to Rule 60(b)(4), Fed.R.Civ.P., for an order declaring the foreign default judgment void on the ground that appellees had not been subject to the personal jurisdiction of the Georgia court. The court below granted

the motion, and vacated the default judgment. Covington subsequently brought this appeal.

I. *Power Of The New York Court To Determine The Validity Of The Judgment Of The Georgia Court.*

Before discussing the jurisdiction of the Georgia court, we must first consider the power of the district court for the Eastern District of New York to pass upon the validity of a sister court's judgment, and more particularly, the propriety of attacking that judgment in the court of registration by way of a motion under Rule 60(b)(4).

▮ A judgment entered against parties not subject to the personal jurisdiction of the rendering court is a nullity. When, in an enforcement proceeding, the validity of the judgment is questioned on this ground, the enforcing court has the inherent power to void the judgment, whether the judgment was issued by a tribunal within the enforcing court's domain or by a court of a foreign jurisdiction, unless inquiry into the matter is barred by the principles of res judicata. *Baldwin v. Iowa State Traveling Men's Assoc.*, 283 U.S. 522, 525, 51 S.Ct. 517, 518, 75 L.Ed. 1244 (1931). While the original court's jurisdiction is presumptively valid, if the issue of jurisdiction has not previously been litigated it may be raised in the enforcing court. *Adam v. Saenger*, 303 U.S. 59, 62, 58 S.Ct. 454, 456, 82 L.Ed. 649 (1938).

Such collateral attacks go by different names, depending upon the precise circumstances in which they arise. When purely

2. Registration in the federal courts is governed by 28 U.S.C. § 1963 which provides that judgments entered in the district courts which have become final may be registered in any other district by the filing of a certified copy of the judgment in such other district. After the copy is filed, the judgment has the same effect as if it had been entered by the registering court. However, the role of the enforcing court is unclear. *Compare United States v. Home Indemnity Co.*, 549 F.2d 10, 13 (7th Cir. 1977) (stating that a district court wherein a judgment is registered has more than merely ministerial powers in the enforcement proceedings, although noting that these powers have not

been precisely defined) *with Gullet v. Gullet*, 188 F.2d 719, 720 (5th Cir. 1951) ("Registration [of a judgment] is purely a ministerial step in its enforcement.").

In the instant case, Covington filed the default judgment in the district court for the Eastern District of New York, apparently complying with 28 U.S.C. § 1963, and also filed in the New York State courts in order to take advantage of the provisions of N.Y. CPLR Law § 5222 (McKinney), governing the enforcement of money judgments, which forbids transfer of property after a restraining notice has been served.

defensive in nature and invoked in opposition to enforcement proceedings the collateral attack may be given no name at all. *See, e. g., Hazen Research, Inc. v. Omega Minerals, Inc.,* 497 F.2d 151, 154 (5th Cir. 1974) ("the defendant may defeat subsequent enforcement in another forum by demonstrating that the judgment issued from a court lacking personal jurisdiction."); *see also Radiation Technology, Inc. v. Southern Rad, Inc.,* 68 F.R.D. 296 (N.D. Ga.1975). In other situations, relief from a foreign judgment, allegedly invalid for lack of personal jurisdiction may be offensively pursued, either by way of an independent equitable action, *Hadden v. Rumsey Products, Inc.,* 196 F.2d 92 (2d Cir. 1952); *Pardo v. Wilson Line of Washington, Inc.,* 414 F.2d 1145 (D.C. Cir. 1969), or through a suit for declaratory relief.

█ Because the court below had the power to entertain appellees' motion and to grant the relief requested, the outcome of the appeal before us will not be governed by the label placed upon appellees' manner of proceeding. Adjudication by nomenclature is a relic of ancient practice, contrary to both the letter and spirit of the Federal Rules of Civil Procedure. As we noted in *Hadden v. Rumsey Products, Inc., supra* at 95, "[I]t would be quite out of harmony with the spirit of Rule 1 [Fed.R.Civ.P.] to hold the appellees bound by the labels placed on the papers submitted to the district court." *See also. Comprehensive Merchandising Catalogs, Inc. v. Madison Sales Corp.,* 521 F.2d 1210, 1211 n.1 (7th Cir. 1975) (Relief from enforcement of purportedly invalid foreign judgment will not be defeated because party may have improperly designated application as motion under Rule 60(b), Fed.R.Civ.P.).

█ In this case, appellees have termed their application as a motion for relief from judgment under Rule 60(b), which in pertinent part provides:

On motion and upon such terms as are just, the court may relieve a party . . . from a final judgment . . . for the following reasons . . . (4) the judgment is void.[3]

Appellants do not question the suitability of Rule 60(b)(4) as a vehicle for attacking a judgment, in the court of *rendition,* as having been issued without personal jurisdiction over the defendants. Appellants do question, however, whether Rule 60(b)(4) may be invoked to obtain the same relief in the court of registration.

Although Rule 60(b) does not specify the correct forum for presenting a motion for relief from judgment, the motion is generally brought in the district court rendering judgment. 7 Moore's Federal Practice ¶ 60.28[1] (2d ed. 1979). In the usual case, the court of rendition will be more familiar with the facts than the court of registration and perhaps more conversant with the applicable law. Where the 60(b) motion is for relief from a default judgment, however, the assumptions about a rendering court's qualifications no longer apply. Where the defendant does not appear to contest jurisdiction and the court does not receive evidence or make findings in the matter except on the issue of damages, the court of rendition is no more familiar with the factual situation than is the court of registration. Under these circumstances, the court of registration therefore seems as qualified to determine the jurisdiction of the rendering court, particularly when the latter is a federal court of coordinate authority.

Recognizing the power in a different court to determine the jurisdiction of the rendering court is particularly appropriate when the party who obtained the default judgment is attempting to enforce it in another court. As Professor Moore notes:

---

3. Other sections of the rule provide for relief from judgment on the grounds of mistake, newly discovered evidence, fraud, satisfaction, or any other justifying reason. Subsection four is unique, however, because relief is not discretionary and a meritorious defense is not necessary. Furthermore, the one year time limit for filing other 60(b) motions does not apply to this subsection. Wright & Miller, Federal Practice and Procedure: Civil § 2862 (1973). We express no opinion on the propriety of utilizing Rule 60 in a registering court for an attack pursuant to any other subsection of Rule 60.

since by registering the judgment in a particular forum the creditor seeks to utilize the enforcement machinery of that district court it is not unreasonable to hold that the latter court has the power to determine whether relief should be granted the judgment debtor under 60(b). 7 Moore's Federal Practice ¶ 60.28[1] at 391–92 (2d ed. 1979), *citing Hadden v. Rumsey Products, Inc., supra.* Hadden concerned an attempt to enforce a judgment entered by the District Court for the Northern District of Ohio and registered in the District Court for the Western District of New York. The debtor sought relief from the judgment on the ground of fraud. Noting that the question whether a 60(b) attack was limited to the district court rendering judgment did not appear to have been judicially determined, this Court allowed the debtor to pursue his attack on the judgment as an independent action for equitable relief in the court of registration. Professor Moore suggests that had this Court reached the 60(b) question in *Hadden* it might properly have determined that the registering court had the power to rule on the motion because the rendering court was no more familiar with the facts surrounding the judgment by confession than the registering court, the creditor had chosen the Western District of New York as the registering forum, and a Rule 60(b) proceeding was no more inconvenient to the creditor than an independent action in equity raising the same issues in the same court. 7 Moore's Federal Practice ¶ 60.28[1] (2d ed. 1979). *Cf. Winfield Associates, Inc. v. Stonecipher,* 429 F.2d 1087 (10th Cir. 1970) (motion pursuant to 60(b) attacking judgment rendered in district court treated as independent action in equity; relief not warranted in registering court where defendant had brought 60(b) motion in rendering court and had failed to appeal its denial).

Although the case law is somewhat meager, precedent exists supporting the proposition that Rule 60(b)(4) may be invoked in the registration court to obtain relief from a foreign default judgment attacked as void for lack of personal jurisdiction over the parties against whom it was rendered. In *Graciette v. Star Guidance, Inc.,* 66 F.R.D. 424 (S.D.N.Y.1975), after obtaining a default judgment against the defendant in the United States District Court for the Central District of California, the plaintiff sought enforcement by registering the judgment in the Southern District of New York. Asserting that it had not been susceptible to the personal jurisdiction of the rendering court, defendant moved in the court of registration under Rule 60(b)(4) for relief. Based upon the dictum in *Hadden v. Rumsey Products, Inc., supra,* discussed above, the court permitted the attack, holding the provision to be an appropriate vehicle for this purpose. Upon consideration of the merits, the court declared the foreign judgment void. *See also United States v. Fluor Corp.,* 436 F.2d 383 (2d Cir. 1970), *cert. denied,* 402 U.S. 945, 91 S.Ct. 1623, 29 L.Ed.2d 114 (1971); *Radiation Technology, Inc. v. Southern Rad, Inc., supra,* 68 F.R.D. 296, 299–300 (N.D.Ga.1975); *Tommills Brokerage Co., Inc. v. Thon,* 52 F.R.D. 200 (D.P.R.1971).

In the instant case, Resintex and Susskind did not appear in the district court of Georgia to contest that court's jurisdiction and thus they have not yet been heard on this issue. *Baldwin v. Iowa State Traveling Men's Assoc., supra,* 283 U.S. at 525, 51 S.Ct. at 518. Furthermore, Covington chose to use the machinery of the New York court to enforce its judgment by seeking to reach New York assets. Under these circumstances, for the reasons discussed above, we hold that appellees properly sought to void the Georgia default judgment in the court below via a motion under Rule 60(b)(4).

II. *In Personam Jurisdiction Of The Georgia Court.*

Covington's assertions of jurisdiction are based on the Georgia long-arm statute which states in part:

A court of this State may exercise personal jurisdiction over any nonresident, or his executor or administrator, as to a cause of action arising from any of the acts, omissions, ownership, use or posses-

sion enumerated in this section, in the same manner as if he were a resident of this State, if in person or through an agent, he: (a) Transacts any business within this State; or (b) Commits a tortious act or omission within this State, except as to a cause of action for defamation of character arising from the act; or

. . . . .

Ga.Code § 24–113.1.

The court below held that Covington had not established in personam jurisdiction over Resintex and Susskind under either subsection (a) or (b).[4]

A. *Transacting Business.*

■ Judge Pratt noted that Covington relies on communications between the parties in Atlanta and Switzerland in the form of telexes to show that Resintex transacted business in Georgia. These telexes led to the establishment of letters of credit in favor of Resintex to pay for denim which was shipped to Haitex, Covington's subsidiary in Haiti. A comparison between these contacts and contacts in several cases interpreting subsection (a) of the Georgia long-arm statute is useful in determining whether the Georgia courts would extend the "jurisdictional welcome mat" to these parties. *Thorington v. Cash*, 494 F.2d 582, 584 (5th Cir. 1974).

Judge Pratt cited *O.N. Jonas Co. v. B & P Sales Corp.*, 232 Ga. 256, 206 S.E.2d 437 (1974), as a leading case on the scope of the Georgia statute. In *Jonas*, agents of the nonresident appellees visited the appellant's plant in Georgia, purchased goods from the appellant by mail or telephone and had the goods shipped F.O.B. shipping point. Holding that these contacts were insufficient for subsection (a) jurisdiction, the Georgia Supreme Court stated that transacting business within the state required that a nonresident purposefully do an act or consummate a transaction within the state, that the cause of action arise from or be con-

nected with that act or transaction, and that the resulting jurisdiction not offend notions of traditional fairness and substantial justice. *Id.* at 439. In *Pennington v. Toyomenka, Inc.*, 512 F.2d 1291 (5th Cir. 1975), the Fifth Circuit held that jurisdiction in Georgia was not proper where the New York defendant communicated by mail and telephone with the Georgia corporations, sent goods to the corporations in Georgia and negotiated checks drawn on Atlanta banks.

The district court in *Fowler Products Co. v. Coca-Cola Bottling Co.*, 413 F.Supp. 1339 (M.D.Ga.1976), stated that subsection (a) did not authorize jurisdiction over a nonresident defendant corporation which purchased manufactured goods from a Georgia corporation after sending specifications and a sales agreement by mail into Georgia and then accepting delivery F.O.B. Georgia. Although noting that the trend in Georgia is to construe subsection (a) most liberally, the court also cited *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), as a reminder that this type of trend did not "herald[s] the eventual demise of all restrictions on the personal jurisdiction of state courts." *Id.* at 251, 78 S.Ct. at 1238. *See also Interstate Paper Corp. v. Air-O-Flex Equipment Co.*, 426 F.Supp. 1323 (S.D.Ga.1977) (no jurisdiction over nonresident corporation which manufactured goods ordered through mail by Georgia corporation and shipped goods F.O.B. shipping point) and *Charia v. Cigarette Racing Team, Inc.*, 583 F.2d 184 (5th Cir. 1978) (insufficient contacts with forum state (Louisiana) to satisfy due process where Florida defendant, pursuant to mail and telephone communications, manufactured a boat for plaintiff, negotiated plaintiff's checks drawn on a Louisiana bank, and shipped the boat to Louisiana F.O.B. Florida).

---

4. Despite Covington's urgings, we decline to consider this case as a question of the extent to which a court may exercise jurisdiction over a nonresident citizen and still comply with the Fifth Amendment's due process requirements. We find, as did Judge Pratt below, that Coving-

ton has not demonstrated that the Georgia long-arm statute confers jurisdiction over Resintex and Susskind, therefore, it is not necessary to reach the constitutional issue. *New York City Transit Authority v. Beazer*, 440 U.S. 568, 99 S.Ct. 1355, 59 L.Ed.2d 587 (1979).

The facts in the instant case clearly do not supply sufficient contacts to establish jurisdiction under subsection (a) of the Georgia long-arm statute. The parties agree that Resintex is a Swiss corporation headquartered in Switzerland. Resintex asserts that it does not have offices or do business in the United States. The telex communications and letters of credit constitute the only contact Resintex or Susskind have had with Georgia. The goods were delivered to Haitex in Haiti and Resintex sent invoices for the goods to Georgia through normal banking channels when it drew on the letters of credit. We are unable to locate any Georgia decision which holds that such minimal contacts with the forum state can justify labeling these activities as transacting business. Although the Georgia courts may construe subsection (a) in a liberal manner as stated in *Fowler*, no decision seems to reach as far as Covington would have us go in the instant case. We are constrained to hold, therefore, that Judge Pratt's application of the transacting business section of the Georgia long-arm statute was proper.

B. *Tortious Act Jurisdiction.*

█ Covington also urges that in personam jurisdiction over Resintex and Susskind can be premised on subsection (b) of the Georgia long-arm statute. Alleging that Resintex and Susskind fraudulently misrepresented the denim's shrinkage factor in communications and invoices sent into Georgia, Covington argues that these activities constitute a tortious act out of the state leading to injury within the state. Georgia courts have interpreted subsection (b) to include this type of "tortious act without, injury within" conduct. *See Atlanta Coliseum, Inc. v. Carling Brewing Co.*, 411 F.Supp. 253 (N.D.Ga.1976).

It appears, however, that Covington's proper claim here is for breach of contractual warranty, not tortious injury. Georgia courts have held that generally a breach of contract does not constitute a tort. *Synthetic Industries, Inc. v. Whitlock, Inc.*, 439 F.Supp. 1297, 1300 (N.D.Ga.1977). Further, as stated in *Interstate Paper Corp. v. Air-O-Flex Equipment Co., supra*, 426 F.Supp. at 1327, "[t]o maintain a suit in tort, the breach of duty must be one imposed by the law and not merely by the contract itself." In the instant case Resintex allegedly supplied goods whose shrinkage factor exceeded that specified in the contract. Resintex's duty was one imposed by the terms of the contract, not by the law.

We are also persuaded by the reasoning of Judge Pratt that Resintex's activities do not fall within either exception to the general rule that breach of contract does not constitute a tort as those exceptions are set forth in *Synthetic Industries*, 439 F.Supp. at 1300. Under those exceptions, a breach of contract may be considered a tort if either a special relationship exists between the parties or the breach resulted from an obligor's misfeasance rather than nonfeasance. Following the analysis in *Synthetic Industries*, Judge Pratt stated that the relationship between the parties here was simply that of purchaser and seller. After discussing the difficulty distinguishing between misfeasance and nonfeasance, Judge Pratt determined that the instant injury, as in *Synthetic Industries*, was a purely economic one for which courts are reluctant to supply redress under a theory of negligence.[5]

In its attempt to qualify for "tortious act without, injury within" jurisdiction, Covington cites several decisions discussing the application of subsection (b). In *Coe & Payne Co. v. Wood-Mosaic Corp.*, 230 Ga. 58, 195 S.E.2d 399 (1973), the Supreme Court of

---

5. Judge Pratt also relied on *Unistrut Georgia, Inc. v. Faulkner Plastics, Inc.*, 135 Ga.App. 305, 217 S.E.2d 611 (1975), which he determined was factually similar to the instant case.

In *Unistrut*, a third party complaint alleged negligent fabrication where plexiglass domes manufactured in Florida did not meet the contract specifications set forth by the Georgia

buyer. The court stated that jurisdiction based on a tortious injury must fail because the duty breached, to fabricate proper domes, arose from the contract alone. In the instant case the duty breached, to supply denim with a specified shrinkage factor, also arose from the terms of the contract alone.

Georgia settled a controversy which had arisen among Georgia courts by adopting the "Illinois Rule" allowing subsection (b) jurisdiction where the tort occurred outside and the injury occurred inside the state. Citation of *Coe & Payne*, however, is not helpful to Covington. Neither party in the instant case is questioning the scope or constitutionality of Georgia's long-arm statute. Rather, Resintex is challenging whether, given the current interpretation of subsections (a) and (b), the activities alleged are sufficient to bring the parties within the reach of the long-arm statute. Covington also relies on *Thorington v. Cash, supra,* which was premised on allegations of fraud. This decision was easily distinguished by Judge Pratt. *Thorington* involved an attempt to rescind a limited partnership agreement which the resident entered in reliance on allegedly fraudulent misrepresentations sent by mail or telephone into the state by the nonresident. Stating that activity by mail or telephone was indistinguishable from activity conducted through a personal messenger, the Fifth Circuit noted that the fraudulent misrepresentations in that case were personally transmitted to the resident by the nonresident, with knowledge and intent that the resident would receive and rely on them in Georgia. The court indicated that the nonresident had thus "purposefully availed himself of the privilege of conducting business within the forum State, thus invoking the benefits and protections of its laws." *Id.* at 587, *quoting Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958). In the instant case, on the contrary, Resintex cannot be said to have invoked the benefits and protections of Georgia law. After the parties agreed to the denim sale, either in Switzerland or Haiti but not in Georgia, Resintex shipped goods to Haiti and sent invoices to Georgia so that it could draw on letters of credit established in its favor by Covington, Haitex's parent company. As Judge Pratt found, Covington established the letters of credit for the convenience of Haitex, which was unable to procure the letters through its own bank. We are unable to find that Judge Pratt erred in concluding that this conduct does not fall within the scope of subsection (b) of the Georgia long-arm statute.

Having determined that neither subsection (a) nor subsection (b) of the Georgia long-arm statute encompasses Resintex's activities, we affirm the judgment below.[6]

LUMBARD, Circuit Judge (concurring):

I agree with the conclusion of the majority that the New York district court could entertain a Rule 60(b) motion to vacate the registered Georgia federal court judgment and that the Georgia court lacked in personam jurisdiction over defendants. I write separately because I reach this conclusion by a somewhat different route.

The transaction giving rise to this suit involved an agreement between a Swiss corporation (Resintex) and a wholly-owned Haitian subsidiary (Haitex) of a Georgia corporation (Covington) for the purchase and sale of denim. Discussions leading up to the agreement took place in Switzerland and the goods were to be delivered to Haiti. Georgia's only contacts with the transaction were: (1) several communications between Resintex in Switzerland and the president of Covington and Haitex in Georgia with respect to financing; (2) financing in part through letters of credit established at Covington's Atlanta bank; and (3) arrival at the Georgia bank of invoices and bills of lading forwarded from Switzerland through normal banking channels.

The plaintiffs sought to avail themselves of the enforcement machinery of the New York courts by registering the Georgia judgment of $183,000 pursuant to 28 U.S.C. § 1963, which provides that a judgment of one district court "shall have *the same effect* as a judgment of the district court of the district where registered and may be enforced in like manner" (emphasis added).

---

**6.** In light of our holding we also find it unnecessary, as did Judge Pratt, to reach the issue of the propriety of service of process on Susskind.

When Covington thereafter instituted garnishment proceedings in the New York Supreme Court in Suffolk County, the appellees moved in the Eastern District Court, under Rule 60(b) to vacate the Georgia default judgment. On July 5, 1979, Judge Pratt ordered that the Georgia judgment be vacated.

As the majority opinion notes, a judgment entered without jurisdiction over the parties is a nullity, and an enforcing court can examine the jurisdiction of the rendering court provided inquiry is not foreclosed by *res judicata. See Baldwin v. Iowa State Traveling Men's Association*, 283 U.S. 522, 51 S.Ct. 517, 75 L.Ed. 1244 (1931). The Georgia court clearly did not decide the question of jurisdiction over Resintex since judgment was entered following default. Covington nevertheless argues that Rule 60(b)(4), which provides that a court "may relieve a party . . . from final judgment" on the ground that "the judgment is void," was not a proper vehicle for relief in the New York court from the judgment rendered in the Georgia court.

Although we have not squarely decided the question here presented, our decisions present no impediment to the action taken here by Judge Pratt. In *Hadden v. Rumsey Products*, 196 F.2d 92 (2d Cir. 1952), we did not reach the question of whether a registered judgment could be attacked in the court of registration by way of a motion under Rule 60(b), but held that the defendant's petition to the New York court could be "treated as an independent action to obtain equitable relief from the [registered] judgment" and that by attempting to register the judgment pursuant to 28 U.S.C. § 1963 in New York, the plaintiff had waived any question as to the personal jurisdiction of the New York court.[1] In *Graciette v. Star Guidance, Inc.*, relying in part on *Hadden*, a district court of registration permitted collateral attack by means of Rule 60(b), noting that "an event sufficient to confer personal jurisdiction for an independent action would be sufficient to confer such jurisdiction for a 60(b) motion raising the same issues." 66 F.R.D. 424, 426 (S.D. N.Y.1975) (footnote omitted). *See also* 7 Moore's Federal Practice ¶ 60.28[1] (2d ed. 1979). Under these circumstances, there is no reason why Rule 60(b)(4) should not be as appropriate a means for attacking a judgment registered in the New York court as it would be for attacking a judgment rendered in the New York court. Nor is there any reason why the New York court should be unable to do by means of Rule 60(b) that which it could do by means of an independent equitable action.

Of course, Judge Pratt, in the exercise of his discretion, could have held that the Georgia court was a more suitable forum for the motion. *See United States v. Fluor Corp.*, 436 F.2d 383 (2d Cir. 1970); *Tommills Brokerage Co., Inc. v. Thon*, 52 F.R.D. 200 (D.P.R.1971). Here, however, where the judgment was entered by default in a federal court of collateral jurisdiction, he certainly did not abuse his discretion by declining so to hold.

*In Personam Jurisdiction in Georgia*

Although Covington asserts that the Georgia court had jurisdiction under either subsection (a) or subsection (b) of the Georgia long-arm statute, its argument in its brief on appeal is limited to subsection (b). Accordingly, I limit my analysis to that subsection.[2]

---

1. Although the majority opinion states that "precedent exists supporting the proposition that Rule 60(b)(4) may be invoked in the registration court," the only decision of this Court cited is *United States v. Fluor Corp.*, 436 F.2d 383 (2d Cir. 1970). In that case, the district court had ruled that the rendering court provided a more suitable forum for appellant's Rule 60(b)(5) motion. We affirmed. The opinion in *Fluor* recognized that a court may, in certain circumstances, grant relief against a judgment registered there, but also noted that "[t]he powers of a district court to grant relief against a judgment registered there under 28 U.S.C. § 1963 have not been comprehensively delineated." *Id.* at 384 85. There was no need to delineate these powers in *Fluor*.

2. I agree with Judge Meskill that there were insufficient contacts between defendants and Georgia to justify jurisdiction under subsection (a).

Subsection (b) of the Georgia long-arm statute has been interpreted broadly to provide jurisdiction where tortious conduct outside the state gives rise to injury within the state. *See, e. g., Atlanta Coliseum, Inc. v. Carling Brewing Co.*, 411 F.Supp. 253 (N.D.Ga.1976); *Coe & Payne Co. v. Wood-Mosaic Corp.*, 230 Ga. 58, 195 S.E.2d 399 (1973). Relying on this interpretation, Covington urges that the defendants' fraudulent misrepresentations as to the denim's shrinkage factor, contained in communications and invoices sent into Georgia, constitute a tortious act out of the state leading to injury in the state.

The real complaint in this action, however, is that the delivered goods did not conform to the contract specifications. "As a general rule, breach of contract does not constitute a tort." *Synthetic Industries, Inc. v. Whitlock, Inc.*, 439 F.Supp. 1297, 1300 (N.D.Ga.1977). Covington cannot avoid this general rule by alleging that since the goods did not comply with the contract specifications, the communications containing these specifications were fraudulent. *Cf. Unistrut Georgia, Inc. v. Faulkner Plastics, Inc.*, 135 Ga.App. 305, 217 S.E.2d 611, 612 (1975) (where plexiglass dome did not meet contract specification, duty breached arose "from the contract alone, and is not one imposed by law" despite allegation of "negligent fabrication"). Covington's reliance on *Thorington v. Cash*, 494 F.2d 582 (5th Cir. 1974), is similarly misplaced.[3] As the majority notes, in *Thorington* the non-resident had "purposefully availed himself of the privilege of conducting business within the forum State. . . ." *Id.* at 587. Surely the same cannot be said of Resintex, particularly since the involvement of the Georgia bank was initiated by Covington when Haitex was unable to obtain sufficient credit in Haiti. Furthermore, the gravamen of the complaint in *Thorington* was fraud in the inducement to contract, not breach of contract.

Any duty breached by Resintex was a duty arising out of the contract. The breach occurred when noncomplying goods were shipped to Haiti. Since Resintex did not commit a tort in Georgia, and since the contract was neither negotiated, signed nor performed in Georgia, Resintex was not subject to the in personam jurisdiction of the Georgia federal court.

---

3. In *Thorington*, the court drew an analogy between "stream of commerce products liability cases" and material misrepresentations sent into the forum state by the non-resident. While this analogy may be useful in a case, like *Thorington*, involving fraud in the inducement to contract, I see no similarity between a "stream of commerce products liability case" and the case now before us, where the parties have entered into a contract and any injury is directly attributable to the failure of one party to comply with that contract.