07-0954.cv
"R" Best Produce v. DiSapio, Sr., et al.

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term 2007

Heard: July 17, 2008                    Decided: August 26, 2008

Docket No. 07-0954-cv

- - - - - - - - - - - - - - - - - - - -
"R" BEST PRODUCE, INC.,
         Plaintiff-Appellee,

              v.

CARMINE DiSAPIO, SR. and CARMINE
DiSAPIO, JR.,
         Defendants-Appellants.
- - - - - - - - - - - - - - - - - - - -

Before: NEWMAN, CALABRESI, and B.D. PARKER, <u>Circuit Judges</u>.

     Appeal from the February 15, 2007, order of the United States District Court for the Southern District of New York (Loretta A. Preska, District Judge), denying a motion to reconsider the denial of a motion to vacate a default judgment on the ground of lack of personal jurisdiction.

     Vacated and Remanded.

> Thomas J. Romans, Hackensack, N.J., for Defendants-Appellants.
>
> Ralph Wood, White Plains, N.Y., for Plaintiff-Appellee.

JON O. NEWMAN, <u>Circuit Judge</u>.

A $28,000 sale of fruit and vegetables has led to an appeal that raises a host of issues concerning appellate jurisdiction, default judgments, personal jurisdiction, and the Perishable Agricultural Commodities Act of 1930, 7 U.S.C. § 499e(c)(5) ("PACA"). These issues arise on an appeal by Defendant-Appellant Carmine DiSapio, Jr., from the February 15, 2007, Order of the District Court for the Southern District of New York (Loretta A. Preska, District Judge), denying his motion for reconsideration of an Order denying his motion to vacate a default judgment for lack of personal jurisdiction.

We conclude that the Appellant's claim that the default judgment should have been vacated for lack of personal jurisdiction raises unresolved factual issues. We therefore vacate the Order denying reconsideration and remand for further proceedings.

## Background

The Plaintiff-Appellee "R" Best Produce, Inc. sold fruits and vegetables to Pat's Market Place of Bristol, Inc., and Pat's Supermarket, Inc. (collectively "the corporations"), which owned and operated supermarkets in Connecticut. The Defendant-Appellant Carmine DiSapio, Jr., ("the son") is the son of Carmine DiSapio, Sr., ("the father") and his wife Denise DiSapio, who were the sole shareholders of the corporations. The relationship of the son to the corporations is in dispute. He contends that at the relevant times he was only a

-2-

salaried employee. The Plaintiff-Appellee contends that he was an officer and director of the corporations and a "dealer" and "commission merchant" within the meaning of the PACA, see 7 U.S.C. § 499a(b)(5), (6).

In July 2003, the Plaintiff filed a complaint in the District Court against the corporations, the father, and the son seeking recovery of the unpaid balance for produce delivered to the corporations, plus interest and attorney's fees. An amended complaint, served by mail, alleged the unpaid balance to be $28,445.99. Like the original complaint, the amended complaint included counts alleging breach of the statutory trust imposed by the PACA on the proceeds of perishable produce, see id. § 499e(c)(2), breach of contract, and other common law causes of action. Subject matter jurisdiction was based both on the PACA and diversity of citizenship.

Although personal jurisdiction was not explicitly alleged in the amended complaint, the Plaintiff subsequently relied on a provision of its standard sales terms, which were set forth on the back of each sales receipt alleged to have remained unpaid. That provision stated that all actions for breach of the sales agreement shall be brought only in the District Court for the Southern District of New York or any other New York State court in New York County or, at the seller's option, in the county of the seller's principal place of business in

New York. Especially pertinent to this appeal, the provision also stated: "Each party consents to the jurisdiction and venue of said Courts." Each sales receipt for unpaid produce bore the signature of an employee of the corporations, often that of the son, above a printed legend stating "RECEIVED IN GOOD ORDER."

All Defendants were personally served with a summons and the complaint. None of the Defendants entered an appearance. Just before the complaint was filed, the corporations filed for bankruptcy under Chapter 11, proceedings later converted to Chapter 7. The Plaintiff sought and was granted a voluntary dismissal of its claims against the corporations.

In January 2005, the Plaintiff filed an affidavit of its counsel alleging that the individual Defendants were in default and that the Plaintiff was entitled to the unpaid balance of $28,445.99 plus prejudgment interest of $7,253.73 (through December 21, 2004) and attorney's fees of $7,111.50, for a total of $42,811.22. The affidavit, captioned "AFFIDAVIT FOR JUDGMENT BY DEFAULT," requested "the entry of Default and the issuance by the Clerk of this Court of a Clerk's Certificate." Although there is no indication that a default was entered, see Fed. R. Civ. P. 55(a), on February 1, 2005, the District Court entered a default judgment, see Fed. R. Civ. P. 55(b)(2), against the father and the son in the amount of $42,811.22, plus $509.12, representing interest from December 21, 2004, to the date of the judgment.

-4-

On July 31, 2006, the father and the son filed a motion to vacate the default judgment under Rules 60(b)(4) and 60(b)(6) of the Federal Rules of Civil Procedure. Since the father later filed an individual bankruptcy petition under Chapter 7, received a discharge as to the Plaintiff's judgment against him, and withdrew his appeal in this Court, only the son's challenge to the default judgment remains relevant to this appeal, and the remainder of this opinion will refer to procedural steps taken, and contentions made, only by the son (except when reciting the District Court's rulings, which referred to both Defendants).

The son's motion to vacate the default judgment was resolved on the basis of affidavits. His initial affidavit alleged the following. At all relevant times he was a salaried employee of the corporations, earning $900 a week. He was never an officer, director, or stockholder of the corporations, did not sign checks for the corporations, and never undertook to be personally responsible to pay the invoices of the Plaintiff or any other supplier.

When he was served with the summons and complaint, he turned them over to his father, who assured him that the matter would be handled by the father's attorneys. The son first learned of the judgment against him in May 2005 from a notice of judgment lien filed against his residence and an investment property, both located in Connecticut.

An opposing affidavit of Lee Pakulsky, the Plaintiff's controller, alleged that the son continued to order produce for the

corporations, knowing that they were not paying for past due invoices, and that he assured the Plaintiff that it would be paid.

The son's reply affidavit denied ever speaking to Pakulsky about payment or financial issues, denied giving assurance that the Plaintiff would be paid, and stated that in signing the receipts he acknowledged only that the items were received in good order.

On August 31, 2006, the District Court orally denied the motion to vacate the default judgment. Concerning the claim under Fed. R. Civ. P. 60(b)(4) that the default judgment was void for lack of personal jurisdiction, Judge Preska stated:

> [B]oth defendants have admitted to signing certain receipts which contained a consent to jurisdiction in this court. As we all know, PACA makes individuals liable for payment for produce under certain terms and conditions, which are present here. As we also know, the entry of a default judgment means that the allegations in the complaint are deemed admitted.
>
> Taking all those facts together, the defendants are subject to jurisdiction in this court and are liable for the breach of trust in not ensuring the payment for the produce under the statute.

With respect to the claim under Fed. R. Civ. P. 60(b)(6), the District Court stated that the Defendants had not acted to vacate the default judgment within a reasonable time, having waited some fourteen months after entry of the judgment. Finally, the Court noted that the motion was denied for the additional reason that the Defendants had not shown a meritorious defense to the charges of nonpayment.

-6-

The record does not reflect any written order denying the motion to vacate or endorsement on the motion itself. The transcript containing the District Court's oral ruling was entered on the docket on September 11, 2006. On the same day, the son filed a motion for reconsideration. The District Court denied that motion in a brief written order dated February 8, 2007, and entered February 15, 2007.

On March 7, 2007, the son filed a notice of appeal. The notice identified the order appealed from as "an order dated February 8, 2007 denying defendants' motion for reconsideration of the District Court's denial of defendants' motion to vacate the default judgment entered against defendants in this action."

## Discussion

### I. Appellate Jurisdiction

The initial issue is whether we have appellate jurisdiction to review the District Court's denial of the motion to vacate the default judgment in view of the fact that the notice of appeal referred only to the District Court's denial of the motion to reconsider the denial of the motion to vacate. "The notice of appeal must . . . designate the judgment, order, or part thereof being appealed." Fed. R. App. P. 3(c)(1)(B). The Supreme Court has treated an appeal from a denial of a motion to vacate, which was deemed to have been filed under Fed. R. Civ. P. 59(e), as "an effective, although inept, attempt to appeal from the judgment sought to be vacated." Foman v. Davis, 371 U.S. 178,

-7-

181 (1962).[1]  The Court reasoned that the appellant's intention to appeal both the denial of the motion to vacate and the underlying judgment "was manifest." Id.  Foman was a strong case for divining such intention because the appellant had also filed a notice of appeal from the underlying judgment, a notice deemed premature and dismissed by the court of appeals. See id. at 180.  However, the Court did not display similar generosity in Torres v. Oakland Scavenger Co., 487 U.S. 312 (1988), when it later confronted the requirement that a notice of appeal must "specify the party or parties taking the appeal." Fed. R. App. P. 3(c)(1)(A).  The Court ruled that a notice of appeal that failed to name a party as one of the appellants was ineffective to permit that party's appeal, despite the listing of the first named party in the case caption followed by the phrase "et al." See 487 U.S. at 317-18.

Cases in our Circuit have not established a clear rule.  Some support for the Appellant's position is found in Ametex Fabrics, Inc. v. Just In Materials, Inc., 140 F.3d 101 (2d Cir. 1998), a case with a complicated procedural history.  A third-party defendant, American

_____

[1]Foman was decided before the adoption of the Federal Rules of Appellate Procedure.  In 1962, former Rule 73(b) of the Federal Rules of Civil Procedure contained language identical to current Rule 3(c)(1)(B) of the Federal Rules of Appellate Procedure. See Fed. R. App. P. 3, Advisory Committee Notes.

-8-

Fast Print, Ltd. ("AFP") moved for and was granted summary judgment. See id. at 106. Thereafter, the District Court stamped the words "Memo Endorsed" on AFP's notice of motion. See id. Our Court "presume[d]" that this stamp was "the alleged October 10, 1995 entry of summary judgment" referred to in AFP's briefs. See id. Since, as our Court pointed out, no separate document containing a judgment was filed until later, see id., the October 10 entry most likely reflected an order granting summary judgment, rather than a judgment conforming to Rule 58 of the Federal Rules of Civil Procedure. In any event, on October 17, the third party plaintiffs filed a motion for reconsideration of the grant of summary judgment. On March 8, 1996, the District Court denied that motion and entered a judgment, dismissing the third-party complaint. On April 1, the third-party plaintiffs appealed from the judgment dated March 8. See id.

Our Court first recognized that, even if the October 10 order was appealable, the filing, within ten days, of a motion to reconsider tolled the 30-day period for taking an appeal. See id.; Fed. R. App. P. 4(a)(4)(A)(iv), (vi). We then considered AFP's claim that even if the third-party plaintiffs could have appealed from the October 10 award of summary judgment, their notice of appeal purported to appeal from what our Court called "the March 8, 1996 denial of the motion for reconsideration."[2] Ametex, 140 F.3d at 106. We then stated, pertinent

_____

[2]Since the March 8, 1996, judgment may well have been the only

-9-

to the pending appeal, that even if the District Court's stamp resulted in a judgment entered October 10, 1995, the notice of appeal from the March 8, 1996, denial of reconsideration sufficed to bring up for review the order granting summary judgment because the "'intent to appeal [that order] can be fairly inferred.'" Id. (quoting Matarese v. LeFevre, 801 F.2d 98, 105 (2d Cir. 1986)).  We also noted that the March 8, 1996, judgment explicitly referred to the award of summary judgment. See id. at 106-07.

Other decisions of this Court are also helpful to the Appellant. In Marvin v. Goord, 255 F.3d 40 (2d Cir. 2001), a pro se litigant filed a notice of appeal from a judgment dismissing his claims and a notice of appeal from an order denying reconsideration of the judgment.  Although the appeal from the judgment was in "administrative default," id. at 42 n.1, we ruled that the appeal from the denial of reconsideration brought up for review the underlying judgment, see id.  The ruling was based both on the appellant's intent and his pro se status. See id.

Marrero Pichardo v. Ashcroft, 374 F.3d 46 (2d Cir. 2004), is the

appealable judgment entered in the case, the notice of appeal from that judgment could properly have been viewed as bringing up for review all prior orders of the District Court, including the October 5, 1995, grant of summary judgment, regardless of the appellants' intent.

reverse of <u>Ametex</u> and <u>Marvin</u>.  In <u>Pichardo</u>, we permitted a notice of appeal from a judgment to bring up for review a District Court's denial of a motion for reconsideration of the judgment. <u>See</u> <u>id.</u> at 54-55.  We noted that the appellant's intent to raise on appeal the ground asserted in his motion for reconsideration was "clear." <u>Id.</u> at 55.

However, some decisions of this Court are unhelpful to the Appellant.  In <u>Shrader v. CSX Transportation, Inc.</u>, 70 F.3d 255 (2d Cir. 1995), a plaintiff brought claims under both the Railway Labor Act ("RLA") and the Federal Employers' Liability Act ("FELA").  On August 1, 1994, the district court dismissed the RLA claim but declined to dismiss the FELA claim.  The defendant moved for reconsideration of the refusal to dismiss the FELA claim.  The district court granted the motion for reconsideration and, on December 8, 1994, dismissed the FELA claim. <u>See</u> <u>id.</u> at 256.  The plaintiff filed a notice of appeal, which our Court understood to be an appeal from the district court's decision, rendered December 8, to reconsider its August 1 ruling and also from the dismissal of the FELA claim. <u>See</u> <u>id.</u>  In his appellate brief, however, he sought to challenge the dismissal of his RLA claim. <u>See</u> <u>id.</u>

Our Court refused to consider the plaintiff's challenge to the dismissal of his RLA claim, noting that the notice of appeal indicated "his intent to appeal only from the district court's December 8, 1994,

-11-

order." Id.[3]

In New Phone Co., Inc. v. City of New York, 498 F.3d 127 (2d Cir. 2007), the district court on August 5, 2005, entered an order dismissing a complaint and issuing an injunction prohibiting the plaintiff's right to file new complaints on the subject of the lawsuit without leave of court. The district court's docket reflects the entry of a clerk's judgment on August 16. That judgment recites the

---

[3]Since the December 8, 1994, order appears to have been the first order dismissing all of the plaintiff's claims, it appears to have been the first appealable order, and it is not clear why an appeal from that apparently final order did not bring up for review all prior rulings of the district court. Indeed, the December 8 order directed the Clerk of the Court "to dismiss plaintiff's complaint," and resulted in a judgment entered the following day. See Shrader v. CSX Transportation, No. 95-7037, Joint Appx. at 585, 586. Apparently, our Court viewed the specific reference in the notice of appeal to the district court's reconsideration of the FELA claim and the subsequent dismissal of that claim as a narrowing of the broad statement in the notice that the plaintiff was appealing from the entirety of the December 8 order. That understanding gained support from plaintiff's Form C pre-argument statement, identifying the issues to be raised on appeal, which made no mention of the dismissal of the RLA claim. See id., Br. for Appellee at 22.

-12-

dismissal of the complaint but, even though it is the final judgment in the action, makes no mention of the filing injunction contained in the August 5 Order. On August 26, the district court denied the plaintiffs' request, made pursuant to the injunction, to file new complaints.

The plaintiffs filed one notice of appeal from both "the Order dismissing the action" entered on August 5 and "the judgment dismissing the action" entered on August 16.[4] This Court vacated the dismissal of the complaint, denied the appeal from the August 26 order without prejudice, but declined to consider the plaintiffs' attempt to obtain review of the injunction restricting the filing of new complaints. See id. at 130-31. We pointed out that "[n]one of the notices [sic] of appeal mention the entry of the filing injunction." Id. at 130.

Even though the notice of appeal sought to appeal from the August 5 Order, which had contained the filing injunction, we declined to consider the injunction because the notice of appeal did not mention it. This strict application of Rule 3(c) can perhaps be explained on the theory that the notice of appeal not only omitted mention of the injunction but also explicitly identified the August 5 Order as one that "dismiss[ed] the action." Arguably, the notice of appeal was thereby limited to exclude appeal of the injunction.

---

[4]See New Phone Co., Inc. v. City of New York, No. 05-4935, Notice of Appeal (Sept. 12, 2005).

-13-

Against this background of decisions, which are not entirely reconcilable, we conclude, for several reasons, that a straightforward approach is needed whereby a notice of appeal from denial of a motion to reconsider, filed within ten days of the order or judgment sought to be considered, suffices to bring up for review the underlying order or judgment, at least where the motion renews arguments previously made.[5] First, a ten-day motion extends the time to appeal from the order or judgment, see Fed. R. App. P. 4(a)(4)(A)(iv)-(vi), and an appellant appealing the denial of such a motion is fairly understood to be seeking review of the order or judgment that was available for appeal within the time limit starting from the denial of the motion. Second, the grounds of a ten-day motion to reconsider often overlap substantially with the grounds asserted in opposition to the underlying judgment or order. Third, this approach accords with our Court's stated practice of "liberally constru[ing] the designation requirement" of Fed. R. App. P. 3(c). See Ametex, 140 F.3d at 106.

---

[5]A Rule 60(b) motion filed within ten days of the order or judgment at issue, is to be contrasted with a motion filed thereafter, which, when denied and appealed, brings up for review only the order denying the motion. See, e.g., Daily Mirror, Inc. v. New York News, Inc., 533 F.2d 53, 56 (2d Cir. 1976). And we need not consider whether a notice of appeal of the denial of a motion to reconsider, filed within ten days of an order or judgment, but making entirely new arguments, would bring up for review the underlying order or judgment.

-14-

Two circuits have used this approach.  See LeBoon v. Lancaster Jewish Community Center Association, 503 F.3d 217, 225 n.6 (3d Cir. 2007) (appeal from denial of motion to reconsider filed "[a]pproximately a week" after dispositive order, id. at 222, brings up for review the dispositive order); Town of Norwood, Mass. v. New England Power Co., 202 F.3d 408, 415 (1st Cir. 2000) (permitting appeal from denial of a timely Rule 59(e) motion to bring up for review the underlying judgment where motion repeated the arguments presented to the district court in opposition to the judgment); cf. Charles A. Wright et al., Federal Practice and Procedure § 2818, at 192-93 & n.11 (2d ed. 1995) (collecting cases holding purported appeal from denial of timely (ten-day) motion for new trial suffices to bring up for review underlying judgment).

What remains to be considered is whether the son's motion to reconsider qualifies as a ten-day motion, i.e., a motion that extends the time for filing a notice of appeal until disposition of the motion, see Fed. R. App. P. 4(a)(4)(A)(iv)-(vi).  He challenged the District Court's Order denying his motion to vacate the default judgment by filing a Notice of Motion for Reconsideration pursuant to Local Rule 6.3 and Rule 60(b).  Any motion for relief under Rule 60(b) qualifies as a ten-day motion, if filed within ten days.  See Fed. R. App. P. 4(a)(4)(A)(vi).  The son filed his Rule 60(b) motion for reconsideration on September 11, 2006.  Judge Preska had orally denied the motion to vacate at the August 31, 2006, hearing.  However, there is no docket entry reflecting entry of that ruling.  A docket entry on

-15-

September 11, 2006, records the filing of the transcript of the August 31 hearing. Since the entry of the filing of the transcript may be regarded as an entry of the denial of the motion to vacate, the motion to reconsider, filed on September 11, was a ten-day motion. Even if the ten-day period started on August 31, when the oral ruling was announced, the Defendant would have had ten business days, excluding weekends and holidays, to file a ten-day motion. See Fed. R. Civ. P. 6(a)(2). With weekends and Labor Day excluded, the ten-day period would not have ended until September 15, 2006.

The son's motion to reconsider was a ten-day motion, and the notice of appeal from its denial sufficed to bring up for review the underlying order denying the motion to vacate the default judgment.

II. Use of Rule 60(b)(4) to Challenge Lack of Personal Jurisdiction

We next consider whether Rule 60(b)(4) may be used to challenge lack of personal jurisdiction. The son moved to vacate the default judgment under Rule 60(b)(4) of the Federal Rules of Civil Procedure, which provides in relevant part that "the court may relieve a party . . . from a final judgment [if] . . . the judgment is void[.]" Fed. R. Civ. P. 60(b)(4). The son admitted receiving service of process, and thereby notice of the action, but argued nevertheless that the default judgment was void because the District Court for the Southern District of New York lacked jurisdiction over his person.

It is well settled that the defense of lack of personal jurisdiction can be waived, see Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 703-05 (1982), and, as

-16-

to a defendant appearing in an action, the defense is deemed waived if not raised by motion before trial, see Fed. R. Civ. P. 12(h)(1). However, "[a] judgment . . . is void . . . if the court that rendered it lacked jurisdiction . . . of the parties." In re Texlon Corp., 596 F.2d 1092, 1099 (2d Cir. 1972) (citation omitted); see 11 Charles Alan Wright et al., Federal Practice and Procedure § 2862, at 326-27 & n.10 (2d ed. 1995 & Supp. 2008) (collecting cases).

Pertinent to this appeal, it is also well settled that voidness of a judgment for lack of personal jurisdiction can be asserted on a collateral challenge after entry of a default judgment. "A defendant is always free to ignore the judicial proceedings, risk a default judgment, and then challenge that judgment on jurisdictional grounds." Insurance Corp. of Ireland, 456 U.S. at 706; Baldwin v. Iowa State Traveling Men's Ass'n, 283 U.S. 522, 525 (1931). And this rule applies even as to a defendant, moving under Rule 60(b)(4), who received notice of the original lawsuit through service of process. See Sloss Industries Corp. v. Eurisol, 488 F.3d 922, 924-25 (11th Cir. 2007); Bally Export Co. v. Balicar, Ltd., 804 F.2d 398, 400-01 (7th Cir. 1986); Covington Industries, Inc. v. Resintex A.G., 629 F.2d 730 (2d Cir. 1980). See also Burda Media, Inc. v. Viertel, 417 F.3d 292, 298-99 (2d Cir. 2005) (merits of a defendant's claim of insufficient service of process considered on appeal from denial of Rule 60(b)(4) motion even though defendant had received actual notice of the action).

It might seem anomalous that an appearing party is deemed to waive lack of personal jurisdiction by not properly asserting it in a timely motion or pleading, but a non-appearing party with notice may suffer a default judgment and later seek relief under Rule 60(b)(4). Apart from juridical fixation on the concept of voidness, the unstated rationale for the distinction is very likely that a non-appearing defendant, even with notice, should be spared the burden of defending in a distant forum and a plaintiff should be careful to join only those defendants as to whom personal jurisdiction can successfully be established in the original action. Of course, the non-appearing defendant might some day wish to bring a subsequent challenge to the default judgment in the distant forum where it was entered, but will usually be permitted to present the challenge defensively, see Hazen Research, Inc. v. Omega Minerals, Inc., 497 F.2d 151, 153 (5th Cir. 1974), or offensively, see Covington Industries, 629 F.2d at 733, in a local forum if the judgment is sought to be enforced against him or his property. Such enforcement, however, is not inevitable, and may never occur if the judgment can be satisfied against other jointly liable defendants.

Rule 60(b)(4) was properly invoked to challenge lack of personal jurisdiction.

III. Timeliness

Although Rule 60(b) provides that most motions for relief, including a motion under Rule 60(b)(4), must be made "within a

-18-

reasonable time,"[6] Fed. R. Civ. P. 60(c)(1), this Court has been

> exceedingly lenient in defining the term "reasonable time," with respect to voidness challenges.  In fact, it has been oft-stated that, for all intents and purposes, a motion to vacate a default judgment as void "may be made at any time."

Beller & Keller v. Tyler, 120 F.3d 21, 24 (2d Cir. 1997) (quoting 12 James Wm. Moore, et al., Moore's Federal Practice § 60.44[5][c]); see Central Vermont Public Service Corp. v. Herbert, 341 F.3d 186, 189 (2d Cir. 2003) (motion to challenge lack of subject matter jurisdiction, filed four years after entry of judgment, was timely); accord Sea-Land Service, Inc. v. Ceramica Europa II, Inc., 160 F.3d 849, 852 (1st Cir. 1998) (recognizing the "any time" rule); see 11 Charles Alan Wright et al., Federal Practice and Procedure § 2866, at 382 (2d ed. 1995 & Supp. 2008) (no time limit); cf. Crosby v. The Bradstreet Co., 312 F.2d 483, 485 (2d Cir. 1963) (30-year-old judgment vacated as void on First Amendment grounds).[7]

---

[6]Rule 60(b) motions for relief on the basis of mistake, newly discovered evidence, or fraud must be brought within one year of the order or judgment. See Fed. R. Civ. P. 60(c)(1).

[7]In Days Inn Worldwide, Inc. v. Patel, 445 F.3d 899 (6th Cir. 2006), the Sixth Circuit ruled that a Rule 60(b)(4) motion to vacate a default judgment was properly denied because of an eleven-month delay in making the motion, but the case is distinguishable.  The defendant was validly served two days before the entry of the default judgment, id. at 902, and conceded that he was then amenable to the

-19-

The Defendant's Rule 60(b)(4) motion was not untimely.

IV.  Existence of Personal Jurisdiction

We arrive, then, at the issue of whether the District Court correctly determined that it had personal jurisdiction over the son. As noted, the District Court upheld personal jurisdiction over the son primarily on the ground that he had consented to personal jurisdiction by signing several receipts that contained a consent to jurisdiction in the Southern District.  We disagree that signing these receipts established the son's consent to personal jurisdiction.

Each receipt included a list of produce delivered and an attached one-page form titled "Standard Sales Terms," which contained the consent-to-jurisdiction clause.  The signature line appeared on the list portion of the receipt above the words "RECEIVED IN GOOD ORDER," suggesting that the person signing might have represented nothing more than receipt of the listed produce in good order, especially since the

_____

district court's personal jurisdiction, see id. at 904-05. The judgment was primarily challenged on the ground that the acquisition of personal jurisdiction just prior to entry of the default judgment deprived the defendant of the normal time period to respond to the complaint, a defect distinct from lack of personal jurisdiction, see id. at 903. Nevertheless, the Sixth Circuit stated that the eleven-month delay warranted denial of a Rule 60(b)(4) motion. See id. at 905-06.

Standard Sales Terms form had no signature line. But even if the Defendant's signature on the receipt committed him to the Standard Sales Terms, the only provision of those terms relating to jurisdiction stated: "Each party consents to the jurisdiction and venue of [the specified] courts" (emphasis added), and the parties to the Standard Sales Terms were the "BUYER," i.e., Pat's Supermarket, Inc. or Pat's Market Place of Bristol, Inc., and the "SELLER," i.e., the Plaintiff. Although the signature of the son, as agent for the corporate buyer, might have sufficed as his corporate employer's consent to the jurisdiction of the District Court, on the record thus far developed, there is no basis for concluding that the son was the buyer or that his signature on the receipt established his consent to the Court's jurisdiction.

However, the District Court did not rely solely on the son's having signed the receipt. After referring to the signed receipt, the Court stated:

> PACA makes individuals liable for payment for produce under certain terms and conditions, which are present here. As we also know, the entry of a default judgment means that the allegations of the complaint are deemed admitted.
>
> Taking all those facts together, the defendants are subject to jurisdiction in this court . . . ."

The District Court was referring to the liability that the PACA creates for purchasers of produce who fall within the statutory definitions of "dealer" or "commission merchant." See 7 U.S.C. §§ 499a(b)(5), (6), 499e. The Plaintiff's amended complaint alleged

-21-

that the son was "a dealer and commission merchant subject to the PACA." The amended complaint also alleged that the son "was in position [sic] of control over the PACA trust assets of [the Plaintiff] during the period of time in question." And we have ruled that "[a]n individual who is in a position to control the assets of the PACA trust and fails to preserve them, may be held personally liable to the trust beneficiaries for breach of fiduciary duty." Coosemans Specialties, Inc. v. Gargiulo, 485 F.3d 701, 705 (2d Cir. 2007).

However, although the allegations of a complaint are deemed admitted for adjudication of the merits when a default judgment is entered by a court with jurisdiction, the entry of a default judgment cannot serve to admit the facts necessary to establish such jurisdiction. Personal jurisdiction must be established in the absence of a defendant's consent or waiver. In this case, the District Court made no findings (other than the inappropriate reliance on the default judgment) to establish that the son was an individual subject to PACA liability.

We will assume, for purposes of this appeal, that if the facts, properly found, show that the son is personally liable under the PACA,[8]

_____

[8]We note, however, that cases in which an individual defendant has been subjected to PACA liability along with a corporation have involved a sole shareholder or an officer/director. See Coosemans

-22-

then the consent of the corporate buyer to personal jurisdiction may be imputed to him.[9] But the establishment of those facts, via the default judgment, for purposes of his liability, does not establish those same facts for purposes of personal jurisdiction. This is not the first case in which a court has recognized that facts established via a default judgment for purposes of the merits cannot suffice to establish the same facts necessary for personal jurisdiction. See Jackson v. FIE Corp., 302 F.3d 515, 531 (5th Cir. 2002). The case must be remanded for a hearing (in view of the conflicting affidavits) and findings as to whether the son was a dealer or commission merchant under the PACA or a person otherwise in control of PACA trust assets.

If the District Court determines that the facts establish, for purposes of personal jurisdiction, sufficient involvement by the son in the affairs of the corporate defendants to render him liable for

Specialties, 485 F.3d at 706 (sole shareholder and sole director); Golman-Hayden Co. v. Fresh Source Produce, Inc., 217 F.3d 348, 350-52 (5th Cir. 2000) (sole shareholder); Morris Okun, Inc. v. Harry Zimmerman, Inc., 814 F. Supp. 346, 347-49 (S.D.N.Y. 1993) (sole officer and sole shareholder).

[9]We make this assumption because the issue is unsettled, has not been briefed, and might well never arise if, as seems likely, the factual basis for the District Court's personal jurisdiction over the son cannot be established on remand.

-23-

PACA obligations, then the Court must resolve the issue, which we have pretermitted, whether the consent of the corporations to personal jurisdiction can be imputed to the son. The Court would then also have to consider the son's challenges to the adequacy of the service of process, on which personal jurisdiction would also depend.

A final issue concerns the burden of proof at the hearing on remand. Normally, a plaintiff has the burden of proving personal jurisdiction in a case where a defendant appears and contests such jurisdiction. See, e.g., Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 197 (2d Cir. 1990). But in a collateral challenge to a default judgment under Rule 60(b)(4), the burden of establishing lack of personal jurisdiction is properly placed on a defendant who had notice of the original lawsuit. See Bally Export, 804 F.2d at 401; Hazen Research, 497 F.2d at 154. Although the defaulting defendant has the opportunity to contest personal jurisdiction long after the default judgment, a defaulting defendant with notice of the action should bear the risk of non-persuasion on this issue since it will normally have greater access to relevant evidence often difficult to assemble after the passage of time. See generally Ariel Waldman, Comment, Allocating the Burden of Proof in Rule 60(b)(4) Motions to Vacate a Default Judgment for Lack of Jurisdiction, 68 U. Chi. L. Rev. 521, 529-36 (2001) (collecting cases and recommending that burden remain with plaintiff). In the analogous context of a Rule 60(b)(4) motion challenging sufficiency of service of process, we have held

-24-

that the defendant bears the burden of proving that service of process was insufficient.  See Burda Media, Inc., 417 F.3d at 299.

## Conclusion

The order denying the motion of Carmine DiSapio, Jr., to vacate the default judgment is vacated, and the case is remanded for further proceedings consistent with this opinion.