# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
December 11, 2020

Lyle W. Cayce
Clerk

No. 19-20160

RHONDA STELLY,

*Plaintiff—Appellee*,

*versus*

PAUL DURISO,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Southern District of Texas
USDC 4:19-CV-708

Before JONES, HAYNES, and HO,[1] *Circuit Judges*.
HAYNES, *Circuit Judge*:

Plaintiff Rhonda Stelly worked with Defendant Paul Duriso at two union hiring halls in south Texas for over a year. In that time, Stelly alleged that Duriso repeatedly asked her offensive, threatening, and humiliating questions relating to her gender. Stelly eventually sued the unions she was affiliated with, as well as a maritime association that used the hiring halls, for

---

[1] Judge Ho concurs in Sections I, II, and III.A. He would certify the question addressed in Section III.B to the Texas Supreme Court for consideration. *See*, *e.g.*, *JCB, Inc. v. The Horsburgh & Scott Co.*, 941 F.3d 144, 145 (5th Cir. 2019).

sexual harassment under federal employment law, arguing that Duriso's conduct created a hostile work environment. Stelly also sued Duriso himself for intentional infliction of emotional distress ("IIED") under Texas state law. The district court entered a default judgment in Stelly's favor on the IIED claim against Duriso, and Stelly ultimately prevailed at trial against one of the other defendants. We conclude that Stelly could not pursue IIED claim against Duriso in light of the other statutory remedies available to Stelly. We therefore VACATE the default judgment on the IIED claim and REMAND for further proceedings.

## I.     Background

Because this is an appeal of a default judgment, we take all well-pleaded factual allegations in Stelly's complaint as true; this section, therefore, reflects the facts as alleged therein. *U.S. ex rel. M-CO Constr., Inc. v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987). In January 2014, Stelly began working as a longshoreman for West Gulf Maritime Association ("WGMA"), an organization that employs skilled longshoremen. Stelly affiliated with two local unions of the International Longshoremen's Association ("ILA"): ILA local union 1316 ("ILA Local 1316") and ILA local union 21 ("ILA Local 21"). Stelly worked alongside Duriso, a board member of both local unions.

Duriso started sexually harassing Stelly shortly after she started coming to the unions' hiring halls. On a number of occasions, Duriso asked Stelly if she needed a "sugar daddy"—that is, someone who could help her in exchange for romantic or sexual favors. Duriso clearly had himself in mind for that role: he regularly described to Stelly the sexual acts he wanted to perform on her. The consequences of rejecting Duriso's advances were similarly made apparent to Stelly: Duriso threatened Stelly that, if Stelly did

not "learn how to 'play ball' like the other women there," Stelly would stop getting work.

Several months into her time at the hiring halls, Stelly filed an internal complaint with ILA Local 21 about Duriso's conduct. Duriso responded by screaming at Stelly, threatening Stelly, and ordering the foremen to pass Stelly over for jobs. ILA Local 21 did nothing to stop the harassment, so Stelly filed another complaint, this time with WGMA, which ultimately resulted in Duriso being suspended pending investigation. But, even then, Duriso continued to come to the hiring halls and harass Stelly.

Stelly eventually sued Duriso, ILA Local 1316, ILA Local 21, and WGMA in federal district court. Stelly asserted employment discrimination and retaliation claims against ILA Local 1316, ILA Local 21, and WGMA under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2000e-17, and an IIED claim against Duriso under Texas state law. Duriso evaded service and did not defend the suit. The district court entered a default judgment against Duriso on Stelly's IIED claim and awarded Stelly $75,000 in damages. The other three defendants, meanwhile, went to trial on the Title VII claims, where Stelly ultimately prevailed against ILA Local 21. *Stelly v. W. Gulf Mar. Ass'n*, 407 F. Supp. 3d 673, 689 (S.D. Tex. 2019), *appeal dismissed sub nom. Stelly v. Int'l Longshoremen's Ass'n Local 21*, No. 19-20730, 2019 WL 8504706 (5th Cir. Oct. 30, 2019).[2] Before that trial was held, the district court certified the judgment against Duriso as a final

---

[2] At trial, the district court granted WGMA's motion for judgment as a matter of law at the close of Stelly's affirmative case. *Stelly*, 407 F. Supp. 3d at 677 n.2. After the jury initially awarded Stelly $5,400 in lost wages and $200,000 in punitive damages against ILA Local 21 and $600 in lost wages and $100,000 in punitive damages against ILA Local 1316, *id.* at 677, the district court granted ILA Local 1316 judgment as a matter of law and directed remittitur with respect to ILA Local 21, proposing an amended judgment in the amount of $60,400, *id.* at 689. Stelly accepted the amended judgment.

judgment under Federal Rule of Civil Procedure 54(b).  Duriso timely appealed.

## II.    Jurisdiction & Standard of Review

The district court had federal question jurisdiction over the Title VII claims under 28 U.S.C. § 1331.  The district court also had supplemental jurisdiction over the IIED claim against Duriso under 28 U.S.C. § 1367(a) because it arose out of the same case or controversy as the Title VII claims. We have jurisdiction to review the district court's judgment under 28 U.S.C. § 1291.  *See Recreational Props., Inc. v. Sw. Mortg. Serv. Corp.*, 804 F.2d 311, 313 (5th Cir. 1986) ("The appeal of a default judgment . . . [is] a final judgment under 28 U.S.C. § 1291 . . . .").

We review the entry of a default judgment for abuse of discretion and any underlying factual determinations for clear error.  *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 495 (5th Cir. 2015).  Because we generally prefer that cases be resolved on the merits, however, we perform that review "with a grain of salt": even a "slight abuse of discretion may justify reversal." *Id.* at 496 (internal quotation marks and citation omitted).

## III.    Discussion

### A.    Rule 60

We first consider whether Duriso can appeal from the default judgment without having first moved to set aside that default judgment in the district court.  Our court has previously identified a circuit split on whether a party must file a Rule 60(b) motion challenging a default judgment in the district court prior to appealing, but we have thus far declined to opine on the subject in a published opinion.  *See BHTT Ent., Inc. v. Brickhouse Café & Lounge, L.L.C.*, 858 F.3d 310, 314 (5th Cir. 2017); *cf. SUA Ins. Co. v. Buras*,

No. 19-20160

421 F. App'x 384, 385 n.2 (5th Cir. 2011) (per curiam[3]) (identifying that a party "[o]rdinarily" files a Rule 60(b) motion but concluding that doing so is not necessary for an appeal).

We now hold that a party's failure to file a motion to set aside a default judgment in the district court does not prevent the party from appealing that judgment to our court.[4]  A final default judgment is, at bottom, a final judgment capable of immediate appellate review.  *See Recreational Props.*, 804 F.2d at 313; *see also* 10A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2684 (4th ed. 2020) ("As a final judgment, a judgment entered pursuant to Rule 55(b)(2) may be reviewed immediately by the court of appeals.").  No statute or rule of civil procedure requires a defaulting party to first contest the default judgment in district court.  In particular, Rule 55(c) itself makes clear that a party *may* move under Rule 60(b) to set aside a default judgment, but it does nothing to suggest that the party *must* do so.  *See* FED. R. CIV. P. 55(c).[5]

---

[3]  Because this opinion is unpublished, it is non-precedential, but we cite it due to the similarity to the issue presented here.

[4] We accordingly agree with the Second and Sixth Circuits (which generally allow a party to appeal a default judgment without first filing a Rule 60(b) motion) and disagree with the Ninth and Eleventh Circuits (which generally do not).  *Compare Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 170–71 (2d Cir. 2001), *and Prime Rate Premium Fin. Corp. v. Larson*, 930 F.3d 759, 768 (6th Cir. 2019), *with Consorzio Del Prosciutto Di Parma v. Domain Name Clearing Co., LLC*, 346 F.3d 1193, 1195 (9th Cir. 2003), *and Commodity Futures Trading Comm'n v. Am. Commodity Grp. Corp.*, 753 F.2d 862, 866 (11th Cir. 1984) (per curiam).

[5]  The Supreme Court has made clear that only statutory provisions can be jurisdictional, not "court-made" procedural rules.  *Hamer v. Neighborhood Hous. Servs. of Chi.*, 138 S. Ct. 13, 16 (2017).  Therefore, even if we were to conclude that a Rule 60 motion is a prerequisite to appealing a default judgment, that requirement could only be a mandatory claim-processing rule, not a jurisdictional one.  *Cf. Recreational Props.*, 804 F.2d at 313; *accord Prime Rate*, 930 F.3d at 768 ("Any Rule 60(b) exhaustion mandate—which would not flow out of any federal statute—instead would count as a non-jurisdictional

No. 19-20160

To be sure, in most circumstances, a party will benefit from using such a motion to develop the record. *See Wooten*, 788 F.3d at 495–96. The defaulting party will be unable to raise any fact questions that were not brought before the district court. *See U.S. ex rel. M-CO Constr.*, 814 F.2d at 1014 ("The default judgment establishes the truth of these factual allegations."). Unpled affirmative defenses are also off the table. *See Henry v. First Nat'l Bank of Clarksdale*, 595 F.2d 291, 298 n.1 (5th Cir. 1979) (noting that affirmative defenses "are considered waived if not pleaded in the trial court"). But the lack of a Rule 60(b) motion is not an absolute barrier: if the existing record and pleadings do not support the judgment, the defaulting party can prevail on appeal without having raised the issues first in the district court with a Rule 60(b) motion. *See, e.g.*, *Pecarsky v. Galaxiworld.com, Ltd.*, 249 F.3d 167, 173–74 (2d Cir. 2001) (vacating a default judgment in large part because the defendant's existing filings before the district court suggested a complete defense).

## B.    IIED Claim

That brings us to the merits: whether the district court appropriately entered a default judgment against Duriso on Stelly's IIED claim. Under Texas law, a plaintiff bringing an IIED claim must demonstrate that the defendant intentionally or recklessly engaged in extreme or outrageous conduct that resulted in severe emotional distress. *Standard Fruit & Vegetable Co. v. Johnson*, 985 S.W.2d 62, 66 (Tex. 1998). But not all such conduct is actionable under IIED—the plaintiff must also demonstrate that there is no alternative cause of action available to address the alleged

---

claims-processing rule." (quotation omitted)). Arguments concerning mandatory claim-processing rules are generally forfeited if the relevant party does not brief them. *See Hamer*, 138 S. Ct. at 16. Stelly did not raise any argument with respect to Rule 60(b) in her briefs, conceding same on oral argument; therefore, any such argument would be forfeited.

misconduct. *Hoffmann-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004). That is because IIED is a "gap-filler" tort reserved for "those rare instances in which a defendant intentionally inflicts severe emotional distress in a manner so unusual that the victim has no other recognized theory of redress." *Id.*

Accordingly, a plaintiff generally cannot sustain an IIED claim if the plaintiff could have brought a sexual harassment claim premised on the same facts: "when the gravamen of the plaintiff's complaint is for sexual harassment, the plaintiff must proceed solely under a statutory claim unless there are additional facts, unrelated to sexual harassment, to support an independent tort claim for intentional infliction of emotional distress." *Id.* at 441. In particular, the Texas Supreme Court has noted that IIED claims against both employers and individual employees premised on sexually harassing conduct can be foreclosed by alternative causes of action under Title VII or the Texas Commission on Human Rights Act ("TCHRA"). *See id.* at 447; *Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 815–16 (Tex. 2005) (rejecting IIED claims against both an employer and an individual employee because the claims were premised on sexual harassment actionable under other statutes).[6]

---

[6] The Texas Courts of Appeals and federal district courts are split on whether the lack of individual liability under Title VII and the TCHRA constitutes a "gap" with respect to coworkers and supervisors that IIED can fill. *See generally Grant v. Lone Star Co.*, 21 F.3d 649, 653–54 (5th Cir. 1994) ("Only 'employers,' not individuals acting in their individual capacity who do not otherwise meet the definition of 'employers,' can be liable under [T]itle VII."); *Jenkins v. Guardian Indus. Corp.*, 16 S.W.3d 431, 742 (Tex. App.—Waco 2000, pet. denied) ("[S]upervisors and managers are not liable in their individual capacities for alleged acts of discrimination under the TCHRA."). Some courts have found a "gap." *See Garcia v. Shell Oil Co.*, 355 S.W.3d 768, 778 (Tex. App.—Houston [1st Dist.] 2011, no pet.); *Dixon v. State Farm Mut. Auto. Ins. Cos.*, 433 F. Supp. 2d 785, 790 (N.D. Tex. 2006); *Sauceda v. Bank of Tex., N.A.*, No. CIV.A.3:04-CV-2201-P, 2005 WL 578474, at *5 (N.D. Tex. Mar. 9, 2005). Others have not. *See Roane v. Dean*, Nos. 03-19-00307-CV, 3-

The gravamen of Stelly's IIED claim here is for sexual harassment. All of Stelly's IIED allegations against Duriso stem from Duriso's sexually harassing conduct in the hiring halls and Duriso's related attempts to retaliate against Stelly for reporting that conduct. Stelly alleged that Duriso repeatedly asked her offensive, threatening, and humiliating questions because of her sex, including direct invitations to help Stelly advance professionally if she gave him sexual favors. Stelly further alleged that Duriso talked "constantly" about sexual things he wanted to do to her. These are all sexual harassment allegations. Indeed, in both the internal complaints Stelly filed and the IIED section of the complaint Stelly filed in federal district court, Stelly characterized Duriso's conduct as such: Duriso, Stelly alleged, had engaged in "sexual harassment" and thereby created a "hostile work environment."

From the beginning of recognizing this tort, the Texas Supreme Court has made clear that IIED is a high threshold to establish. *See Twyman v. Twyman*, 855 S.W.2d 619, 621–22 (Tex. 1993) (adopting cause of action and emphasizing IIED is subject to "rigorous legal standards"). Because of our determination above, we need not consider whether Stelly's allegations identify a disturbing pattern of behavior that would give rise to an IIED claim

---

19-00352-CV, 2020 WL 2078252, at *4–5 (Tex. App.—Austin Apr. 30, 2020, pet. filed); *Swafford v. Bank of Am. Corp.*, 401 F. Supp. 2d 761, 764 (S.D. Tex. 2005).

Although we recognize that the Texas Supreme Court has not definitively resolved whether the lack of individual liability under Title VII or the TCHRA leaves a "gap" fillable by IIED, the court's decision in *CreditWatch* strongly suggests that its answer is "no." In that case, the court rejected IIED claims against both an employer *and* an individual because those claims "stemmed from [the employee]'s lewd advances" and were therefore "covered by other statutory remedies." 157 S.W.3d at 816. We predict the Texas Supreme Court would follow a similar approach here, where the allegations underlying Stelly's IIED claim all stem from Duriso's sexual harassment. *See Ironshore Eur. DAC v. Schiff Hardin, L.L.P.*, 912 F.3d 759, 764 (5th Cir. 2019) ("If the Texas Supreme Court has not ruled on an issue, we make an *Erie* guess, predicting what the Texas Supreme Court would do if faced with the same facts." (cleaned up)).

in other settings. Stelly had alternative remedies here. Specifically, because Duriso's conduct happened entirely in connection with the workplace, Stelly could seek redress against WGMA, ILA Local 1316, and ILA Local 21 under Title VII.[7] Indeed, Stelly did just that, using Duriso's conduct as a basis for her Title VII claims against those defendants. Further, Stelly ultimately prevailed on such claims against ILA Local 21. *See Stelly*, 407 F. Supp. 3d at 678–81. The availability of those statutory remedies on the same facts forecloses Stelly's IIED claim against Duriso. *See Hoffmann-La Roche*, 144 S.W.3d at 447; *CreditWatch*, 157 S.W.3d at 816. There is, in short, no "gap" that IIED needs to fill in this case. *Hoffmann-La Roche*, 144 S.W.3d at 447. The district court therefore abused its discretion in entering a default judgment on that claim.

Accordingly, we VACATE the district court's default judgment on the IIED claim and REMAND to the district court for further proceedings consistent with this opinion.[8]

---

[7] In its ruling on the other defendants' post-trial motions for judgment as a matter of law, the district court identified that we have not expressly determined whether Title VII applies to labor organizations. *Stelly*, 407 F. Supp. 3d at 678 (concluding that the weight of authority from other circuits indicates that labor organizations can be sued under Title VII). Neither party to this appeal suggests that Stelly was unable to pursue Title VII claims against ILA Local 1316 and ILA Local 21, and so we need not (and do not) resolve the question of labor organization liability under Title VII generally.

[8] Because we conclude that the district court erred in determining that Stelly could sustain an IIED claim against Duriso, we do not address Duriso's arguments that the district court's default judgment did not comply with Rule 54.