# United States Court of Appeals for the Fifth Circuit

———————————

No. 23-10131
Summary Calendar

———————————

United States Court of Appeals
Fifth Circuit

**FILED**
September 25, 2023

Lyle W. Cayce
Clerk

Phile Andra Watson,

*Plaintiff—Appellant*,

*versus*

Megan J. Brennan, *Postmaster General United States Postal Service*,

*Defendant—Appellee*.

———————————————————————

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:20-CV-181

———————————————————————

Before King, Haynes, and Graves, *Circuit Judges*.

Per Curiam:[*]

*Pro se* plaintiff Phile Andra Watson ("Watson") is a sixty-year-old African American man (At the time of the original Complaint, Watson was fifty-six years old). Watson sued Megan J. Brennan, his former employer, in her official capacity as Postmaster General of the United States Postal Service ("USPS"). In the operative complaint, Watson alleges four claims: 1)

———————————————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 23-10131

discrimination and retaliation based on his sex and age in violation of Title VII of the Civil Rights Act and The American Discrimination in Employment Act; 2) hostile work environment; and 3) intentional infliction of emotional distress. USPS filed a motion for summary judgment on all claims on May 2, 2022. Watson filed a motion for summary judgment on May 3, 2022. The district court granted the motion for summary judgment in favor of USPS on January 26, 2023. We AFFIRM.

## BACKGROUND

In October 2017, Watson began employment with USPS at the North Carrier Annex in Fort Worth, Texas. He began a three-month probationary period ending on January 21, 2018. As a Rural Carrier Associate ("RCA"), Watson sorted mail, delivered mail, and returned collected mail to the post office. He was responsible for successfully completing his deliveries within an "evaluated time," the time allotted for each RCA to complete his or her route.

Watson received formal training in the same manner as other new RCAs. Between his start date and the end of his probationary period, however, Watson failed to timely sort mail, deliver mail, and complete any routes within the evaluated time. To improve his efficiency, Watson received more training and tips. Yet, other RCAs had to retrieve and deliver some of his mail and work excess hours to complete his tasks. Watson acknowledges that he would deliver mail later than other carriers and that his supervisor complained to him about timeliness. Because Watson could not complete his work in a timely fashion, Susan Knudsen, one of his supervisors, assigned him to a static route to deliver a limited number of parcels.

At the thirty-day performance evaluation, Watson was rated "unsatisfactory" in three performance areas—work quantity, work quality, and dependability. At the sixty-day performance evaluation, Watson had not

improved and received "unsatisfactory" in the same performance areas. During his second performance evaluation, Watson justified his inadequate performance by expressing that he was not properly trained. Ester Wilson, his supervisor, prepared a report recommending Watson be separated from service due to his failure to deliver express mail and his failure to complete his route within the evaluated time. Donna Dunker, USPS Human Resources manager, agreed with this recommendation and notified Watson of his termination on January 18, 2018.

On January 18, 2018, Watson filed a discrimination charge with USPS and filed a formal Equal Employment Opportunity Commission complaint alleging discrimination and harassment. The EEOC administrative judge granted summary judgment in favor of USPS. Subsequently, USPS issued a final decision denying Watson's claims.

On January 24, 2020, Watson filed his original Complaint against Megan J. Brennan, in her official capacity as Postmaster General of the United States Postal Service. Watson alleged 1) wrongful termination, 2) sex and color discrimination, 3) age and sex discrimination, 4) harassment and bullying, 5) quid pro quo, 6) intentional infliction of emotional distress, 7) mental anguish, and 8) emotional distress. The district court dismissed the case without prejudice on June 2, 2020, due to Watson's failure to effect service of process on the defendant. Watson filed a motion to reopen the case on June 23, 2020, and the district court reinstated the case on November 19, 2020. Watson amended the original complaint on March 10, 2021. Watson amended the second complaint on May 7, 2021. The second amended complaint, the operative complaint, alleges 1) unlawful discrimination and retaliation based on his sex and age, 2) hostile work environment, and 3) intentional infliction of emotional distress.

No. 23-10131

On January 9, 2023, the magistrate judge submitted a report recommending that Defendant's motion for summary judgment be granted and Plaintiff's cross-motion be denied. The district judge reviewed the magistrate judge's report and Watson's objections, and, after conducting a *de novo* review, adopted the magistrate judge's report as the findings and conclusions of the court and granted the Defendant's motion.

Watson now files this *pro se* appeal challenging the district court's grant of Defendant's motion for summary judgment.

## STANDARD OF REVIEW

This court reviews a grant of summary judgement *de novo*, applying the same legal standard as the district court. *Sierra Club, Inc. v. Sandy Creek Energy Associates, L.P.,* 627 F.3d 134, 139 (5th Cir. 2009)(quotations omitted). Summary judgment should be rendered if the record demonstrates that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). To determine whether there is a fact issue, this court views the facts and the inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Daniels v. City of Arlington, Tex.,* 246 F.3d 500, 502 (5th Cir. 2001).

## DISCUSSION

We first address Watson's discrimination claim based on his sex and age in violation of Title VII and the ADEA. The district court concluded that Watson (a) was not qualified for the position considering his performance issues, (b) did not establish that his proffered comparators were similarly situated or treated more favorably, and (c) did not establish that he was otherwise discharged because of his age. On appeal, Watson's brief does not adequately address where the district court erred. "[A] party forfeits an argument by failing to raise it in the first instance in the district court—thus raising it for the first time on appeal—or by failing to adequately brief the

4

argument on appeal." *Rollins v. Home Depot USA*, 8 F.4th 393, 397 (5th Cir. 2021)(citation omitted). To the extent that Watson's brief is adequate, the district court properly dismissed Watson's discrimination claims because he failed to establish a prima facie case of discrimination based on sex or age.

To establish a prima facie case of discrimination under both Title VII and the ADEA, an employee must demonstrate that (1) he is a member of a protected class, (2) he was qualified for the position he sought, (3) he suffered an adverse employment action, and (4) other similarly situated employees outside the protected class were treated more favorably. *Saketto v. Admin of Tulane Educ. Fund*, 31 F.4th 990, 998 (5th Cir. 2022). To satisfy the fourth prong, a plaintiff must engage in a "comparator analysis" to establish he was treated less favorably than a similarly situated employee outside his protected class under nearly identical circumstances. *Id.*

First, Watson does not provide competent evidence that he was qualified for the job. Watson contends that he was not properly trained and that he was not in the RCA position during the full duration of his employment. While Watson acknowledged that he had performance deficiencies, he blamed them on his lack of training. But the record reflects that "[Watson] received the same training as other RCAs, if not more." After receiving more training, Watson was unable to complete his rural route and was moved to a static route to deliver parcels. This change in duties "did not alter his status as an RCA." At both the 30-day and 60-day evaluations, Watson received "unsatisfactory" in three categories—work quantity, work quality, and dependability. Given his performance deficiencies, the district court properly concluded that Watson was not qualified for the RCA position.

Second, Watson had no evidence that his comparators were similarly situated. Watson proffers Robin Mott as a comparator for his sex

discrimination claim. Yet, Mott and Watson were not similarly situated employees. Mott, a white female, is five years older than Watson and received similar training. Moreover, unlike Watson, Mott had completed her probationary period prior to Watson being hired at USPS. Additionally, Mott did not have any recorded performance deficiencies in her file. As the district court explains, "Mott even assisted [Watson] on his route once."

Similarly, Watson proffers Prosperine Chirashagasha as a comparator for his age discrimination claim. Yet, Chirashagasha and Watson are not similarly situated employees. Chirashagasha, a 30-year-old African-American woman, was hired the same day as Watson. Chirashagasha did not have any recorded performance deficiencies in her file and was "more successful in performing her job duties than Mr. Watson." While it is unclear whether Watson argues that Chirashagasha was a comparator for his sex discrimination claim, the district court correctly concluded that this claim "is unavailing because one USPS central scheduler assigns RCAs to particular facilities and routes based on the needs of the organization and the applicable collective bargaining agreement." Because Watson failed to establish the prima facie case for discrimination based on age or sex, his Title VII and ADEA discrimination claims fail.

We now turn to Watson's hostile work environment claim. Watson's operative complaint does not include an allegation of a hostile work environment. This claim is only made during the EEOC proceedings, where he alleged "derogatory" remarks directed towards him by a USPS supervisor. On review, the district court properly found that Watson failed to establish an actionable hostile work environment claim.

To establish a prima facie case of harassment alleging hostile work environment, the employee must establish that (1) [he] belongs to a protected group; (2) [he] was subject to unwelcome harassment; (3) the harassment

was based on a protected characteristic; (4) the harassment affected a term, condition, or privilege of his employment; and (5) his employer knew or should have known of the harassment and failed to promptly take remedial action. *Watts v. Kroger Co.*, 170 F.3d 505, 509 (5th Cir. 1999). "Simple teasing, offhand comments, and isolated incidents (unless extremely serious)" do not "amount to discriminatory changes in the "terms and conditions of employment." *Faragher v. City of Boca Rotan*, 542 U.S. 775, 789 (5th Cir. 1998).

The record only includes comments about Watson that were assessments of his work product. As the district court noted, the only statement that can be construed to be related to Watson's gender is from a supervisor who claimed that "he should be wearing Cowgirls Pink." Although this comment can be construed as improper, offhand comments along those lines do not establish an actionable hostile work environment claim. Thus, the district court properly granted summary judgment to USPS on this claim.

We now turn to Watson's retaliation claim. The district court found that Watson did not administratively exhaust the retaliation claim, which is required by Title VII, and that Watson's retaliation claim does not "grow out of" a filed EEOC charge.

"To establish a prima facie case of retaliation, the employee must establish that: (1) he participated in an activity protected by Title VII; (2) his employer took an adverse employment action against him; and (3) a causal connection exists between the protected activity and the adverse employment action." *McCoy v. City of Shreveport*, 492 F .3d 551, 556-57 (5th Cir. 2007). Title VII mandates that discriminatory retaliation claims are administratively exhausted prior to filing a discriminatory suit. However, "a district court has ancillary jurisdiction to hear a claim of retaliation, even

though not filed with the EEOC, when it grows out of an administrative charge that is properly before the court." *Barrow v. New Orleans S.S. Ass'n*, 932 F .2d 473, 479 (5th Cir. 191).

On review, the district court correctly concluded that Watson did not exhaust the retaliation claim and that the claim does not "grow out of" a filed EEOC charge. First, Watson's filed complaint with the EEOC does not include a retaliation claim. Watson contends that he filed a retaliation claim with the EEOC and that the EEOC closed this claim in April 2022. However, as the district court explained: "There is no record to support this proposition." Second, Watson's retaliation claim does not "grow out of" the previously filed EEOC charges. Watson's brief does not clearly articulate the specific action that is retaliatory. Watson's employment was permanently terminated on January 18, 2018, prior to the filing of the EEOC charges. Because USPS was no longer his employer after he was terminated, USPS could not retaliate against him, for example, by failing to renew his contract. *See Gupta v. East Texas State University*, 654 F.2d 411,413 (5th Cir. 1981)("After Gupta instituted this lawsuit, he was notified that his teaching contract would not be renewed for the following year. Gupta contends that his nonrenewal was in retaliation for his filing charges with the EEOC.").

We now turn to Watson's pursuit of an intentional infliction of emotional distress claim. The availability of remedies under Title VII and ADEA foreclose the pursuit of an intentional infliction of emotional distress claim based on the same conduct. *Stelly v. Duriso*, 982 F.3d 403, 409 (5th Cir. 2020). The remedies provided by an intentional infliction of emotional distress claim are intended to fill the "gap" when other remedies are insufficient. *Id.*

The district court properly dismissed Watson's tort claim because it fails as a matter of law. Watson's Title VII and ADEA claims are based on

No. 23-10131

the same alleged facts used to substantiate his intentional infliction of emotional distress claim. Given the available remedies, the pursuit of the intentional infliction of emotional distress claim is foreclosed.

For these reasons, we AFFIRM the judgement of the district court.